**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

---------------------------------------------------------- x
                                       :

In re:                                 :          Chapter 11
                                         :

OUTER HARBOR TERMINAL, LLC,[1]      :          Case No. 16-10283 (LSS)
                                         :
                                         :

                  Debtor.            :
---------------------------------------------------------- x

**DEBTOR'S MOTION FOR ENTRY OF INTERIM AND FINAL
ORDERS (I) AUTHORIZING DEBTOR TO (A) PAY PREPETITION
WAGES, SALARIES, AND OTHER COMPENSATION, AND EMPLOYEE
BENEFITS, AND (B) CONTINUE EXISTING EMPLOYEE BENEFIT PLANS
AND PROGRAMS, (II) AUTHORIZING BANKS AND FINANCIAL INSTITUTIONS
TO PAY ALL CHECKS  AND ELECTRONIC PAYMENT REQUESTS
RELATING TO THE FOREGOING, AND (III) SCHEDULING A FINAL HEARING**

Outer Harbor Terminal, LLC, the debtor and debtor-in-possession (the "<u>Debtor</u>") in the above-captioned chapter 11 case, hereby files this motion (the "<u>Motion</u>") seeking entry of interim and final orders, substantially in the forms attached hereto as **<u>Exhibit A</u>** and **<u>Exhibit B</u>** respectively, (i) authorizing the Debtor, in its sole discretion, to (a) pay prepetition wages, salaries, and other compensation, employee business expense allowances and reimbursements, third-party payroll processor expenses, and employee benefits, and (b) continue certain of its existing employee benefit plans and programs, (ii) authorizing banks and other financial institutions to receive, process, honor, and pay all checks and electronic payment requests relating to the foregoing, (iii) scheduling a final hearing, and (iv) granting certain related relief, as described more fully herein.  In support of this Motion, the Debtor respectfully state as follows:

---

[1]     The last four digits of the Debtor's federal tax identification number are 2070.  The Debtor's principal place of business is located at 1599 Maritime Street, Oakland, CA 94607.

## Jurisdiction

1.      This court (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  The Debtor consents to the entry of a final order by the Court in connection with this Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested herein are sections 105, 363, and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2015-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

## Background

4.      On February 1, 2016 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtor continues to operate its business as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No party has requested the appointment of a trustee or examiner and no committee has been appointed or designated in this chapter 11 case.

5.      Formed in 2009, the Debtor is a privately-owned, limited liability company headquartered in Oakland, California that provides container terminal operations and stevedore services at the Port of Oakland (the "Port"), the fourth largest port on the west coast of the United States.  The Debtor's principal operations consist of: (i) the offloading and onloading of containers from cargo ships that berth at the Port; (ii) loading the offloaded containers on to trucks so that they may delivered from the Port to their ultimate domestic destination; and

(iii) providing various logistical services to the Debtor's customers in connection with the foregoing. The Debtor operates from leased berths and terminal space that are owned by the Port.

6.      Prior to the Petition Date, following years of the Debtor operating at a loss and sustaining material, negative cash flows, the Debtor's members voted to terminate and wind down the Debtor's business operations. The Debtor commenced the wind down on or about January 19, 2016 and intends to continue that process through the chapter 11 case.

7.      Additional information regarding the Debtor's business, assets, capital structure, and the circumstances leading to the filing of this chapter 11 case is set forth in the *Declaration of Heather Stack, Chief Financial Officer, in Support of Chapter 11 Petition and First Day Pleadings of Outer Harbor Terminal, LLC, Debtor and Debtor in Possession* (the "First Day Declaration"), which is being filed contemporaneously herewith.

## Employee Compensation

8.      As of the Petition Date, the Debtor employs approximately 55 employees, consisting of 53 full-time salaried and 2 part-time hourly employees (collectively, the "Employees"). The Employees consist of the Debtor's senior management and certain other employees engaged in the administration and operation of the Debtor's business, including a vice president of operations, operations managers, operations superintendents, a director of engineering, finance managers, IT managers, and each of the foregoing's respective staff. The Employees' valuable skill sets, indispensable institutional knowledge, industry expertise, and overall familiarity and understanding of the Debtor's operations make them key to the success of this chapter 11 case.

9.     In addition, the Debtor uses a unionized workforce in the operation of its terminal, consisting of the following categories of local union members (collectively, the "Union Workers"):  (i) watchmen, (ii) foremen, (iii) longshoremen, and (iv) clerks.  Although the Debtor seeks certain relief with respect to the Union Workers as set forth herein (namely, authority to continue processing payments to PMA (defined below)), the Union Workers are not the Debtor's employees.   Pacific Maritime Association ("PMA") is an organization that supplies and administers maritime labor agreements with the International Longshore and Warehouse Union ("ILWU"), a labor union which primarily represents dock workers on the west coast of the United States, on behalf of its member companies, made up of marine terminal operators (including the Debtor) and shipping lines operating on the west coast of the United States.  The Debtor has no contractual relationship with the Union Workers[2] and does not pay the wages of the Union Workers.

10.     In the ordinary course of business, the Debtor pays and incurs a number of obligations related to the Employees, including, but not limited to:  (i) wages and salaries; (ii) vacation and paid absences; (iii) employee business expense allowances and reimbursements; (iv) payroll taxes and processing fees; (v) employee bonuses; (vi) employee benefits, as described below ((i)-(vi) together, the "Employee Obligations").  By this Motion, the Debtor seeks authority to honor postpetition and pay prepetition Employee Obligations in the ordinary course of business to Employees, provided, however, that any such payments to Employees shall not exceed an aggregate cap of $12,475 per Employee.

---

[2]     However, the Debtor is a signatory to the ILWU labor contract as a member company of PMA.

4

## I.    Wages and Salaries

11.    In the ordinary course, the Debtor funds its payroll obligations to all of its Employees on a bi-weekly basis on Wednesday through ADP, LLC ("ADP").  ADP then pays Employees their wages, via direct deposit to each of the Employees' personal bank accounts, on the immediately following Friday, which is the last day of that pay period.  Prior to the Petition Date, the Debtor's approximate aggregate bi-weekly gross payroll for all Employees was $190,000.  On January 29, 2016, ADP funded, and the Employees received, regularly-scheduled paychecks for the two-week period ended that day.  In addition, prior to the Petition Date, the Debtor also funded a stub period payroll to ADP for the period of January 30, 2016 through and including February 1, 2016.

12.    In light of the prepetition funding of Employees' wages and salaries (the "Prepetition Wages"), the Debtor does not believe that there are any outstanding Prepetition Wages as of the Petition Date that would need to be funded by the Debtor's estate.  Nevertheless, out of an abundance of caution, by this Motion, the Debtor seeks entry of an order authorizing the Debtor, in its sole discretion, to honor and pay the Prepetition Wages in the ordinary course of business to Employees, subject to an aggregate cap of $12,475 per Employee for all of such Employee's prepetition Employee Obligations.

## II.    Vacation Pay and Certain Other Paid Time Off

13.    Vacation Policy.  The Debtor provides paid vacation time to all full-time Employees.  Vacation hours begin to accrue in the first pay period after the date of hire and vacation days are granted as follows, in proportion to the amount of time an Employee has worked for the Debtor:  (i) Employees with 0-4 years of service are awarded 10 days per year; (ii) Employees with 5-9 years of service are awarded 15 days per year; and (iii) Employees with 10 or more years of service are awarded 20 days per year.  Vacation days roll over and accrue

from year to year, though, vacation time will cease to accrue once a maximum of what would normally accrue in eighteen (18) months (including personal holiday time) has been attained (and exceeding the 18-month maximum requires two levels of management approval plus approval of the human resources department).  All accrued but unused vacation time up to the maximum thirty (30) days typically was paid to Employees upon termination of their employment with the Debtor, whatever the reason.  Part-time and temporary Employees are not eligible for paid vacation time.

14.    <u>Sick Days and Floating Holidays</u>.  Full-time Employees accrue sick leave, which covers absence due to illness or injury, at a rate of 1 day per month (12 days per year).  Part-time and temporary Employees are not eligible for paid sick leave.  Unused sick leave may be carried over and accrued up to a maximum of thirty (30) days of paid sick leave.  Sick leave has no cash value and accrued but unused sick leave will not be paid at the end of an Employee's employment with the Debtor.  The Debtor also offers nine (9) paid holidays per year and three (3) paid floating holidays each year for any purpose to all full-time permanent Employees. Maximum accrual of floating holidays is two (2) days, and no further accrual will occur until floating holiday time is taken.

15.    As of the Petition Date, the Debtor's aggregate prepetition obligations to eligible Employees for accrued vacation and floating holidays (the "<u>Prepetition Vacation Obligations</u>") totaled approximately $317,500.  By this Motion, the Debtor seeks entry of an order authorizing the Debtor, in its sole discretion, to honor and continue to pay the Prepetition Vacation Obligations to the Employees in the ordinary course of business as the Debtor moves forward in this chapter 11 case; <u>provided</u>, <u>however</u>, that the Debtor is not seeking interim authority at this

6

time to cash out any Prepetition Vacation Obligations and intends to seek such authority only at the final hearing on the Motion.

### III.   Business Expense Allowances and Reimbursements

16.     In the ordinary course of business, the Debtor allows certain of its employees to incur certain reasonable out-of-pocket business expenses in the ordinary course of business, such as necessary and authorized travel expenses and business entertainment expenses.  Many of these expenses are charged directly to the Debtor's corporate credit cards (the "Credit Cards") issued by American Express through the Debtor's corporate credit card program (the "Credit Card Program").  As of the Petition Date, approximately 21 Credit Cards have been issued.  The Debtor has policies in place that regulate the use of the Credit Cards and the Debtor's corporate headquarters is able, and does, monitor the use of the Credit Cards on a frequent and ongoing basis.  The Debtor estimates that on average, and in the aggregate, approximately $25,000 is charged to the Credit Cards per month.  As of the Petition Date, the total in outstanding prepetition amounts on account of the Credit Cards is approximately $7,000.

17.     In addition, certain business expenses may be paid directly by employees and reimbursed upon review and approval by the Debtor.  As of the Petition Date, the total in outstanding prepetition claims for expense reimbursement is approximately $3,000.

### IV.   Employee Bonus Programs

18.     The Debtor has historically offered an annual management incentive plan (the "MIP") to all full-time employees to ensure appropriate rewards are provided for achieving goals that support the Debtor's overall business strategy.  The MIP is a discretionary bonus program tied to certain key performance indicators that are reviewed and revised regularly by the Debtor's senior management and human resources department.  As such, the MIP is subject to change from year to year.

19.     In addition, Employees who have a direct impact on operations (i.e., a majority of the Debtor's Employees, but not including finance, IT, or other non-operational personnel) are eligible to receive a quarterly "safety incentive bonus" based on certain targeted safety measures. The safety incentive bonus is paid in the amount of $1,000 per quarter to each Employee when such safety targets have been achieved.  There is a separate safety incentive bonus payable to the vice president of operations upon the completion of safety targets, in the amount of $5,000 annually.

20.     The Debtor funded prior to the Petition Date the substantial majority of amounts owed pursuant to the MIP and the safety incentive bonus to eligible employees employed by the Debtor through year-end 2015.[3]  To the extent the Debtor determines, in connection with its final review of company performance for the applicable time periods, that there are any accrued but unpaid bonus obligations under the MIP and the safety incentive program as of the Petition Date (the "Bonus Obligations"), the Debtor intends to request, at a final hearing on the Motion, entry of an order authorizing the Debtor, in its sole discretion, to pay the Bonus Obligations, subject to an aggregate cap of $12,475 per Employee for all of such Employee's prepetition Employee Obligations.

## V.     Payroll Taxes, Payroll Funding and Processing Fees

21.     As required by law, the Debtor regularly deducts amounts from the Employees' paychecks for local, state and federal taxes, employee benefits, and employee programs that the Debtor had historically sponsored (the "Payroll Withholding Amounts").  In light of the timing of the payroll funding prepetition, as of the Petition Date, the Debtor believes that there are no Payroll Withholding Amounts currently being withheld.

---

[3]     The approximate aggregate amount funded in connection with the MIP is $750,000.

22.     The Debtor uses ADP to process payroll for the Employees.  ADP does not directly invoice the Debtor for its payroll processing services and, instead, all fees associated with ADP systems and services are paid by affiliates of the Debtor in connection with their "shared services" arrangement with the Debtor.[4] Because of the funding of payroll immediately prior to the Petition Date, as of the Petition Date, the Debtor does not believe it owes any outstanding amounts to ADP.

23.     The Debtor funds by wire its obligations to PMA for the Union Workers weekly on Tuesday.  Typically, these regular payments include a small portion on account of a fee component to PMA.  Prior to the Petition Date, the Debtor funded estimated union-related wages and associated fees to PMA for the period of January 23, 2016 through and including February 1, 2016.  Again, because of the timing of such funding, the Debtor does not believe it owes any outstanding amounts to PMA.

24.     Out of an abundance of caution, although the Debtor does not believe any such prepetition amounts are outstanding, the Debtor seeks entry of an order authorizing the Debtor, in its sole discretion, to (i) pay all Payroll Withholding Amounts to the respective taxing authority or plan administrator, or make payments on account of such employee benefits and (ii) pay any outstanding amounts to ADP and PMA for any unpaid prepetition services.

---

[4]     The "shared services" arrangement between the Debtor and certain of its affiliates is more fully described in the *Debtor's Motion for Entry of Interim and Final Orders (I) Authorizing the Debtor to (A) Continue Operating Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, (C) Continue Making Electronic Payments and Transfers, (D) Maintain Existing Business Forms, (E) Continue to Use Company Charge Cards and Pay Claims Related Thereto, and (F) Performing Under the Existing Shared Services Arrangement with the Debtor's Affiliates and Continue Other Intercompany Transactions; (II) Waiving the Requirements of Section 345(b); and (III) Scheduling a Final Hearing*, which is being filed concurrently herewith.

## Employee Benefit Programs

25.     The Debtor provides eligible, full-time Employees (and their spouses and children to a certain extent), in the ordinary course of business, with a number of employee benefits, including, but not limited to, (i) medical insurance, (ii) dental insurance, (iii) vision insurance, (iv) flexible spending accounts, (v) life insurance, (vi) disability insurance, (vii) 401(k) retirement savings plan, and (viii) workers' compensation, as described in greater detail below.

    i.    Medical Plan:  The Debtor offers preferred provider organization (PPO) plans and high deductible health (HDHP) plans[5] through Aetna, as well as health maintenance organization (HMO) plans through Aetna and Kaiser Permanente. These medical plans are administered by Alliant Insurance Services, to whom the Debtor pays approximately $550 per month in fees for its services.  As of the Petition Date, the Debtor provides insurance coverage to substantially all of its employees, contributes roughly 81% to the cost of the plan they choose, and deducts employee contributions for insurance each payroll cycle.  Historically, this coverage cost the Debtor approximately $57,000 per month in premiums.

    ii.    Dental Plan:   Delta Dental of NJ provides high option and low option dental insurance plans to approximately 50 of the Debtor's employees.  Historically, this coverage cost the Debtor approximately $3,500 per month in premiums.

    iii.    Vision:  Vision Service Plan provides vision insurance coverage to approximately 49 of the Debtor's Employees.   Historically, this coverage cost the Debtor approximately $1,000 per month in premiums.

    iv.    Flexible Spending Accounts: The flexible spending accounts ("FSA") (which consist of the Health Care Spending Account, the Limited-Use Health Care Spending Account, and the Dependent Care Spending Account) offer a tax benefit by allowing Employees to pay for eligible health and dependent care expenses with pretax dollars. For Employees who elect to enroll in one or more accounts under the FSA, an amount each Employee elects is deducted from such Employee's paycheck on a pretax basis and allocated toward such account. Employees may be reimbursed for eligible expenses or use a debit card issued to participating Employees for qualified expenses.  As of the Petition Date, approximately two Employees participate in the FSA.  Historically, the FSA cost the Debtor a nominal administrative fee of approximately $0 to $20 per month.

---

[5]     Employees enrolled in an HDHP plan are also eligible to take advantage of a Health Savings Account ("HSA"). All employees enrolled in this plan have HSA accounts. The Debtor makes a one-time annual contribution to such employees on account of either $1,000 or $2,000 depending on coverage level.

v.  Life Insurance & AD&D:  The Debtor provides basic life and accidental death and dismemberment ("AD&D") insurance coverage to eligible Employees through Reliance Standard, in an amount two times an Employee's annual earnings, up to a maximum of $350,000.  As of the Petition Date, approximately 52 Employees receive such coverage, which historically cost the Debtor approximately $1,300 per month.  The Debtor also offers business travel AD&D insurance coverage, through The Hartford, that covers Employees while they are traveling on company business, in an amount five times an Employee's annual earnings, up to a maximum of $1,000,000.  Historically, this benefit cost the Debtor approximately $12 per month.

vi.  Disability Insurance:  The Debtor offers long-term disability insurance through Reliance Standard, which provides a monthly benefit of 60% of an Employee's pre-disability monthly earnings (capped at $12,500 per month), when an Employee has been injured for more than a 90 day waiting period. Historically, this coverage cost the Debtor approximately $860 per month in premiums.  The Debtor also offers short-term disability insurance through the State of California Disability Insurance program subject to payroll tax withholding, in an amount calculated based on an Employee's tenure with the Debtor.  As of the Petition Date, two of the Employees were on disability leave – one long-term and one short-term.

vii.  401(k) Plan:  The Debtor maintains a 401(k) plan for the benefit of the Employees, administered by Principal Financial Group.  The Debtor provides matching contributions of 100% up to 6% of an Employee's salary. The Debtor pays approximately $20,000 in monthly expenses associated with matching contributions and administering the 401(k) plan.

viii.  Worker's Compensation:  The Debtor provides worker's compensation insurance to Employees through Ports Insurance Company.  In California, the state administers workers' compensation through the Division of Workers' Compensation.  In addition, certain of the Debtor's Employees are covered by the United States Longshore and Harbor Workers Compensation Act (USL&H), which applies to maritime employees who work on or over navigable waters. Historically, the Debtor contributed approximately $450,000 per month to these workers' compensation programs, which is comprised of approximately $15,000 for state programs and the remainder for USL&H.  As of the Petition Date, there were two individuals receiving workers' compensation benefits.

26.  In addition to the employee benefits identified above, the Debtor offers its employees a number of voluntary benefits, including, but not limited to, supplemental life insurance coverage for employees and family members, legal services through Hyatt Legal Plans (a MetLife Company), home and automobile insurance, pet insurance administered through

MetLife, and a commuter assistance plan (these voluntary benefits, together with benefits (i)-(viii) listed above,  the "Employee Benefit Programs").  The Debtor administer the premiums associated with the voluntary programs identified above.  The Debtor does not pay for the other voluntary benefits.

27.    By this Motion, the Debtor seeks entry of an order authorizing the Debtor, in its sole discretion, to continue to provide the Employee Benefit Programs to Employees in the ordinary course of business.

### Relief Requested

28.    The Debtor seeks entry of interim and final orders, pursuant to sections 105, 363, and 507 of title 11 of the Bankruptcy Code, Rules 6003 and 6004 of the Bankruptcy Rules, and Rule 2015-2 of the Local Rules, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, respectively, (i) authorizing the Debtor, in its sole discretion, to pay (a) amounts relating to the prepetition Employee Obligations and (b) continue existing Employee Benefit Programs, (ii) authorizing banks and other financial institutions to receive, process, honor, and pay all checks and electronic payment requests relating to the foregoing, (iii) scheduling a final hearing on this Motion, and (iv) granting certain related relief.

29.    The Debtor represents that it will not pay any amounts over $12,475 to any individual Employee on account of such Employee's prepetition Employee Obligations, and that it will not pay any amounts over a total aggregate amount of $100,000 on account of prepetition Employee Obligations on an interim basis.

**Basis for Relief**

I.  **Ample Cause and Authority Exists for the Debtor to Pay Employee Obligations and Honor Employee Benefit Programs in the Debtor's Discretion**

30.     In order to maintain its workforce throughout this chapter 11 case and until the Debtor's operations have been successfully wound down, the Debtor believes it is imperative that it continues to pay, in its sole discretion, the outstanding prepetition Employee Obligations, subject to an aggregate cap of $12,475 per Employee for all of such Employee's prepetition Employee Obligations, and to continue, in its sole discretion, the Employee Benefit Programs. Doing so will ensure that those Employees that remain with the Debtor will have assurance that their wages, salaries, and benefits will continue uninterrupted and thus stabilize the Debtor's workforce.  Any delay in such payment may cause disruption to employee morale and significant interruptions in the Debtor's ongoing wind-down of its operations.

31.     The relief requested in this Motion may be authorized pursuant to sections 105(a) and 363(b) of the Bankruptcy Code and the "doctrine of necessity."  Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  Courts, in turn, frequently apply section 105(a) to authorize relief in chapter 11 cases, similar to that sought herein, where the debtor has a workforce that is important to the preservation of its business. See, e.g., In re Chateaugay Corp., 80 B.R. 279, 287 (S.D.N.Y. 1987) (denying leave to appeal bankruptcy court order authorizing debtor to pay pre-bankruptcy wages, salaries, employee benefits, reimbursements, and workers' compensation claims and premiums); In re Ionosphere Clubs, Inc., 98 B.R. 174, 177 (Bankr. S.D.N.Y. 1989) (same);  In re Gulf Air, Inc., 112 B.R. 152, 154 (Bankr. W.D. La. 1989) (authorizing debtor to pay current employees' pre-bankruptcy wages, salaries, medical benefits, and business expense claims).

32.     In so holding, courts typically rely on the "necessity of payment" doctrine, first enunciated by the United States Supreme Court in Miltenberger v. Logansport Ry. Co., 106 U.S. 286 (1882), by which courts may authorize a debtor to make postpetition payments with respect to prepetition claims where such payments are necessary for the preservation of the estate.  See also In re Lehigh & New England Ry. Co., 657 F.2d 570, 581 (3d Cir. 1981) (declining to apply necessity of payment doctrine in context of a railway no longer in operation, but noting that, under necessity of payment doctrine, "if payment of a claim which arose prior to reorganization is essential to the continued operation of the [business] during reorganization, payment may be authorized even if it is made out of corpus [of the estate]"); In re Meridian Auto Sys.-Composite Operations, Inc., 372 B.R. 710, 714 (Bankr. D. Del. 2007) (granting debtor authority to pay prepetition obligations owed to certain critical vendors); In re Just for Feet, Inc., 242 B.R. 821, 824-26 (D. Del. 1999) (noting that debtors may pay prepetition claims that are essential to the continued operation of debtors' business).

33.     Here, payment of the prepetition Employee Obligations and continuation of Employee Benefit Programs is warranted pursuant to section 105(a) and the "doctrine of necessity."   In the absence of such relief, the Debtor believes that the Employees may seek alternative employment opportunities.  Indeed, it is difficult to envision an employee who would continue to work for an employer who has filed, or announced its intention to file, a petition for bankruptcy, particularly an employer that is in the midst of winding down its operations, absent any assurances by the employer that the employee will be paid in full on a timely basis. Consequently, the Debtor's inability to pay Employee Obligations and to continue to honor Employee Benefit Programs would significantly increase the risk that the Debtor would prematurely lose its workforce and almost certainly impair the Debtor's ability to implement a

safe and orderly wind-down of its operations.   Where failure to make payments of certain essential prepetition claims threatens to disrupt a debtor's efforts to avail itself of the chapter 11 process, bankruptcy courts routinely invoke their equitable powers to authorize a debtor to pay such claims under the doctrine of necessity.   See In re Eagle-Picher Indus., Inc., 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) (authorizing payment of prepetition claims as "necessary to avert a serious threat to the [c]hapter 11 process").

34.    The Court may also authorize the Debtor to pay the Employee Obligations and continue the Employee Benefit Programs arising or relating to the period after the Petition Date pursuant to section 363(b) of the Bankruptcy Code, which provides that "the trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).   To approve the use of a debtor's assets outside the ordinary course of business pursuant to section 363(b) of the Bankruptcy Code, the Court must find that a "good business reason" exists for the use of such assets.   See, e.g., Official Comm. of Unsecured Creditors v. Enron Corp. (In re Enron Corp.), 335 B.R. 22, 27-28 (S.D.N.Y. 2005) (quoting In re Lionel Corp., 722 F.2d 1063, 1071 (2d Cir. 1983)).   In this case, the payment of certain prepetition employee wages and benefits, and the continuation of existing benefits, in order to preserve and protect the Debtor's business, retain currently working employees, maintain positive employee morale, and ultimately administer this chapter 11 case efficiently and effectively as the Debtor implements an orderly wind-down of its operations, is a "good business reason" to authorize such prepetition payment.   Indeed, the Debtor believes such authorization is necessary to keep its existing workforce intact until its operations have been safely and securely wound down, in order to maximize the value of its bankruptcy estate for the benefit of all parties in interest in this chapter 11 case.

35.     For example, the inability to continue the Credit Card Program would create hardship for the Debtor and its Employees.  Obtaining new credit cards would result in significant costs and delays, and would prevent the Employees, who use the Credit Cards on a regular basis, from performing their duties.  Further, the Credit Card Program is an important benefit for the Debtor's Employees, as these Employees may be unable to pay for certain business expenses from their personal funds and await reimbursement from the Debtor. Although the Debtor pays invoices for the American Express corporate cards, the accounts are held in the names of individual employees and, therefore, to the extent the Debtor fail to remit payment to American Express for valid and legitimate charges, the Employees may be personally liable for the same.

36.     Finally, because the prepetition wages and other employee claims for which the Debtor seeks authority to satisfy would be entitled to priority treatment under sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code, and do not exceed the $12,475 cap set forth in section 507(a)(4) per Employee, such claims ultimately would be paid before the claims of general unsecured creditors in any event.  The Debtor's general unsecured creditors are therefore not prejudiced by the requested relief.

**II.     The Court Should Authorize the Debtor's Financial Institutions to Honor Checks and Electronic Fund Transfers Relating to Employee Wages, Reimbursable Expenses, and Employee Benefit Programs**

37.     By this Motion, the Debtor requests that all applicable banks and other financial institutions be authorized to receive, process, honor, and pay all checks presented for payment and to honor all fund transfer requests made by the Debtor related to the Employee Obligations or Employee Benefit Programs, whether such checks were presented or fund transfer requests were submitted prior to or after the Petition Date.

16

## Bankruptcy Rule 6003 Is Satisfied

38.    Bankruptcy Rule 6003 empowers a court to grant relief within the first twenty-one (21) days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003. For reasons discussed above, authorizing the Debtor to pay, in its sole discretion, the prepetition employee claims, and granting the other relief requested herein, is integral to the Debtor's ability to transition into this chapter 11 case. Failure to receive such authorization and other relief during the first twenty-one (21) days of this chapter 11 case would severely disrupt the Debtor's ongoing wind-down process at this critical juncture. For the reasons discussed herein, the relief requested is necessary in order for the Debtor to operate its businesses in the ordinary course and maximize the value of the Debtor's estates for the benefit of all stakeholders as the Debtor conducts an orderly wind-down of its operations. Accordingly, the Debtor submits that it has satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

## Reservation of Rights

39.    Nothing contained herein is intended or should be construed as an admission as to the validity of any claim against the Debtor, a waiver of the Debtor's right to dispute any claim, or an approval or assumption of any agreement, contract, or lease under section 365 of the Bankruptcy Code. The Debtor expressly reserves the right to contest any claim related to the relief sought herein. Likewise, if the Court grants the relief sought herein, any payment made pursuant to an order of the Court is not intended to be nor should it be construed as an admission as to the validity of any claim or a waiver of the Debtor's right to subsequently dispute such claim.

### Waiver of Bankruptcy Rule 6004(a) and 6004(h)

40.     To implement the foregoing successfully, the Debtor requests that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtor has established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

### Notice

41.     The Debtor will provide notice of this Motion to:  (i) the Office of the United States Trustee for the District of Delaware; (ii) the holders of the 20 largest unsecured claims on a consolidated basis; (iii) any banking or financial institution that holds the Debtor's accounts; and (iv) all parties entitled to notice pursuant to Local Rule 9013-1(m).  As this Motion is seeking "first day" relief, notice of this Motion and any order entered hereon will be served on all parties required by Local Rule 9013-1(m).  The Debtor submits that, in light of the nature of the relief requested and the urgency of the circumstances surrounding this Motion, no other or further notice need be given.

### No Prior Request

42.     The Debtor has not previously sought the relief requested herein from this or any other Court

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

18

WHEREFORE, the Debtor respectfully requests entry of interim and final orders substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, respectively, (i) authorizing the Debtor, in its sole discretion, to (a) pay prepetition Employee Obligations and (b) continue existing Employee Benefit Programs, (ii) authorizing banks and other financial institutions to receive, process, honor, and pay all checks presented for payment and electronic payment requests relating to the foregoing, (iii) scheduling a final hearing, and (iv) granting such further relief as may be appropriate and proper.

Dated:  February 1, 2016
Wilmington, Delaware

Respectfully submitted,

**RICHARDS, LAYTON & FINGER, P.A.**

/s/ Mark D. Collins
Mark D. Collins (No. 2981)
Marisa A. Terranova Fissel (No. 5396)
One Rodney Square
920 North King Street
Wilmington, DE 19801
Telephone:    (302) 651-7700
Facsimile:    (302) 651-7701
Email:        collins@rlf.com
              terranova@rlf.com

-and-

**MILBANK, TWEED, HADLEY & MᶜCLOY LLP**
Gregory A. Bray (*pro hac vice* admission pending)
Thomas R. Kreller (*pro hac vice* admission pending)
Haig M. Maghakian (*pro hac vice* admission pending)
601 S. Figueroa Street, 30th Floor
Los Angeles, CA 90017
Telephone:    (213) 892-4000
Facsimile:    (213) 629-5063
Email:        gbray@milbank.com
              tkreller@milbank.com
              hmaghakian@milbank.com

-and-

Dennis F. Dunne
Samuel A. Khalil
28 Liberty Street
New York, NY 10005
Telephone:    (212) 530-5000
Facsimile:    (212) 530-5219
Email:        ddunne@milbank.com
              skhalil@milbank.com

*Proposed Counsel to Debtor and Debtor in Possession*

## Exhibit A

**Proposed Form of Interim Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

```
------------------------------------------------------------  x
                                                              :
In re:                                                        :      Chapter 11
                                                              :
OUTER HARBOR TERMINAL, LLC,[1]                                :      Case No. 16-10283 (LSS)
                                                              :
                                                              :
                  Debtor.                                     :
------------------------------------------------------------  x
```

**INTERIM ORDER (I) AUTHORIZING DEBTOR TO (A) PAY PREPETITION WAGES, SALARIES, AND OTHER COMPENSATION, AND EMPLOYEE BENEFITS AND (B) CONTINUE EXISTING EMPLOYEE BENEFIT PLANS AND PROGRAMS, (II) AUTHORIZING FINANCIAL INSTITUTIONS TO PAY ALL CHECKS AND ELECTRONIC PAYMENT REQUESTS MADE BY DEBTOR RELATING TO THE FOREGOING, AND (III) SCHEDULING A FINAL HEARING**

Upon consideration of the motion (the "Motion")[2] of Outer Harbor Terminal, LLC, the debtor and debtor-in-possession (the "Debtor") in the above-captioned chapter 11 case, seeking entry of an interim order (this "Interim Order"), pursuant to Sections 105, 363, and 507 of title 11 of the Bankruptcy Code, Rules 6003 and 6004 of the Bankruptcy Rules, and Rule 2015-2 of the Local Rules, (i) authorizing the Debtor, in its sole discretion, to (a) pay prepetition amounts relating to the Employee Obligations and (b) continue its existing Employee Benefit Programs, (ii) authorizing banks and other financial institutions to receive, process, honor, and pay all checks presented for payment and electronic payment requests relating to the foregoing, (iii) scheduling a final hearing, and (iv) granting certain related relief, all as more fully set forth in the Motion; and upon consideration of the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that

---

[1]   The last four digits of the Debtor's federal tax identification number are 2070.  The Debtor's principal place of business is located at 1599 Maritime Street, Oakland, CA 94607.

[2]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtor's estates, creditors, and other parties in interest; and this Court having found that the Debtor's notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted on an interim basis to the extent set forth herein.

2.      The Debtor is authorized, in its sole discretion, to honor and pay its prepetition Employee Obligations in an aggregate amount not to exceed $100,000 until entry of a final order approving the relief requested in the Motion.

3.      Subject to the interim cap set forth above, the Debtor is authorized, in its sole discretion, to honor and pay the Prepetition Wages in the ordinary course to Employees.

4.      Notwithstanding any other provision of this Interim Order, no payments to any individual employee on account of prepetition Employee Obligations shall exceed the amounts set forth in sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code.

5.      Subject to the interim cap set forth above, the Debtor is authorized, in its sole discretion, to continue to honor Employee Benefit Programs for its Employees in the ordinary course of business.

6. Nothing herein shall be deemed to authorize the payment of any amounts in satisfaction of postpetition bonus or severance obligations, which are subject to section 503(c) of the Bankruptcy Code.

7. At the final hearing on the Motion, the Court shall address that portion of the Motion in which the Debtor seeks authority to (i) pay the remaining Bonus Obligations, if any, and (ii) the cash out any accrued vacation and leave time for employees that may be terminated.

8. Subject to the interim cap set forth above, the Debtor is authorized, in its sole discretion, to continue to (i) pay any Payroll Withholding Amounts to the respective taxing authority or plan administrator in accordance with the Debtor's stated policies and prepetition practices, and (ii) pay any outstanding amounts to ADP and PMA for any unpaid prepetition services.

9. In accordance with this Interim Order and any other order of this Court, the Debtor is authorized to pay all processing fees associated with, and all costs incident to, payment of the Employee Benefit Programs and reimbursable expenses.

10. The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment.

11. All banks and financial institutions are authorized to rely on the Debtor's designation of any particular check or electronic payment request as approved by this Interim Order.

12.     The Debtor is authorized, in its sole discretion, to continue the Credit Card Program in the ordinary course and is further authorized to pay all claims arising in connection with the Credit Cards, including any prepetition amounts due to American Express.

13.     Notwithstanding anything in the Motion or this Interim Order to the contrary, any payment made by the Debtor pursuant to the authority granted herein shall be subject to any order authorizing the Debtor's access to and use of cash collateral and postpetition debtor-in-possession financing.

14.     Notwithstanding the relief granted herein and any actions taken hereunder, nothing contained in the Motion or this Interim Order or any payment made pursuant to this Order shall constitute, nor is it intended to constitute, an admission as to the validity or priority of any claim or lien against the Debtor, a waiver of the Debtor's rights to subsequently dispute such claim or lien, or the assumption or adoption of any agreement, contract, or lease under section 365 of the Bankruptcy Code.

15.     Nothing contained in the Motion or this Interim Order shall be deemed or construed as an admission as to the validity or priority of any claim or lien against the Debtor or as a waiver of the Debtor's rights to dispute any claim or lien.

16.     The final hearing (the "Final Hearing") on the Motion shall be held on _____, 2016, at __:___ __.m. Eastern Time.  Any objections or responses to entry of a final order on the Motion shall be filed on or before __:___ __.m. Eastern Time on _____, 2016, and served on the following parties:  (i) proposed co-counsel for the Debtor, (a) Milbank, Tweed, Hadley & McCloy LLP, 601 S. Figueroa Street, 30th Floor, Los Angeles, CA 90017, Attn:   Gregory A. Bray, Esq., Thomas R. Kreller, Esq., and Haig M. Maghakian, Esq., and (b) Richards, Layton & Finger, P.A., One Rodney Square, 920 North King

Street, Wilmington, Delaware 19801, Attn: Mark D. Collins, Esq.; (ii) the Office of the United States Trustee, 844 King St., Suite 2207, Lockbox 35, Wilmington, DE 19801, Attn:  Jane Leamy, Esq.; and (iii) all parties entitled to notice pursuant to Local Rule 9013-1(m).  In the event no objections to entry of a final order on the Motion are timely received, this Court may enter such final order without need for the Final Hearing.

17.    Entry of this Interim Order is necessary to avoid immediate and irreparable harm. The requirements of Bankruptcy Rule 6003(b) have been satisfied.

18.    Adequate notice of the Motion has been provided.  Such notice satisfies the requirements of Bankruptcy Rule 6004(a).

19.    Notwithstanding Bankruptcy Rule 6004(h), 7062, and 9014, the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

20.    The Debtor is authorized to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion.

21.    This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

Dated:  February ____, 2016
              Wilmington, Delaware
                                                                                    _____
                                                                                    THE HONORABLE LAURIE SELBER SILVERSTEIN
                                                                                    UNITED STATES BANKRUPTCY JUDGE

## <u>EXHIBIT B</u>

**Proposed Form of Final Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

```
------------------------------------------------------------  x
                                                              :
In re:                                                        :        Chapter 11
                                                              :
OUTER HARBOR TERMINAL, LLC,¹                                  :        Case No. 16-10283 (LSS)
                                                              :
                                                              :
                     Debtor.                                  :
------------------------------------------------------------  x
```

**FINAL ORDER (I) AUTHORIZING DEBTOR TO (A) PAY PREPETITION
WAGES, SALARIES, AND OTHER COMPENSATION, AND
EMPLOYEE BENEFITS AND (B) CONTINUE EXISTING EMPLOYEE
BENEFIT PLANS AND PROGRAMS, AND (II) AUTHORIZING FINANCIAL
INSTITUTIONS TO PAY ALL CHECKS AND ELECTRONIC PAYMENT
REQUESTS MADE BY DEBTOR RELATING TO THE FOREGOING**

Upon consideration of the motion (the "Motion")² of the Outer Harbor Terminal, LLC,

the debtor and debtor-in-possession (the "Debtor") in the above-captioned chapter 11 case,

seeking entry of a final order (this "Order"), pursuant to sections 105, 363, and 507 of title 11 of

the Bankruptcy Code, rules 6003 and 6004 of the Bankruptcy Rules, and rule 2015-2 of the

Local Rules, (i) authorizing the Debtor, in its sole discretion, to pay (a) prepetition amounts

relating to the Employee Obligations and (b) continue its existing Employee Benefit Programs,

(ii) authorizing banks and other financial institutions to receive, process, honor, and pay all

checks presented for payment and electronic payment requests relating to the foregoing, and

(iii) granting certain related relief, all as more fully set forth in the Motion; and upon

consideration of the First Day Declaration; and this Court having jurisdiction over this matter

pursuant to 28 U.S.C. §§ 157 and 1334; and this Court having found that this is a core

proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that venue of this

---

¹   The last four digits of the Debtor's federal tax identification number are 2070.  The Debtor's principal place of
    business is located at 1599 Maritime Street, Oakland, CA 94607.

²   Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtor's estates, creditors, and other parties in interest; and this Court having found that the Debtor's notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at hearings before this Court (the "Hearings"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearings establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.     The Motion is granted on a final basis to the extent set forth herein.

2.     The Debtor is authorized, in its sole discretion, to honor and pay its prepetition Employee Obligations.

3.     The Debtor is authorized, in its sole discretion, to (i) pay the remaining Bonus Obligations, if any, and (ii) cash out any accrued vacation and leave time for employees that may be terminated.

4.     Notwithstanding any other provision of this Order, no payments to any individual employee on account of prepetition Employee Obligations shall exceed the amounts set forth in sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code.

5.     The Debtor is authorized, in its sole discretion, to continue to honor Employee Benefit Programs for its Employees in the ordinary course of business.

6.     Nothing in this Order shall be deemed to violate, or permit a violation of, section 503(c) of the Bankruptcy Code.

7.      The Debtor is authorized, in its sole discretion, to continue to (i) pay any Payroll

Withholding Amounts to the respective taxing authority or plan administrator in accordance with

the Debtor's stated policies and prepetition practices, and (ii) pay any outstanding amounts to

ADP and PMA for any unpaid prepetition services.

8.      In accordance with this Order and any other order of this Court, the Debtor is

authorized to pay all processing fees associated with, and all costs incident to, payment of the

Employee Benefit Programs and reimbursable expenses.

9.      The banks and financial institutions on which checks were drawn or electronic

payment requests made in payment of the prepetition obligations approved herein are authorized

to receive, process, honor, and pay all such checks and electronic payment requests when

presented for payment.

10.      All banks and financial institutions are authorized to rely on the Debtor's

designation of any particular check or electronic payment request as approved by this Order

11.      The Debtor is authorized, in its sole discretion, to continue the Credit Card

Program in the ordinary course and are further authorized to pay all claims arising in connection

with the Credit Cards, including any prepetition amounts due to American Express.

12.      Notwithstanding anything in the Motion or this Order to the contrary, any

payment made by the Debtor pursuant to the authority granted herein shall be subject to any

order authorizing the Debtor's access to and use of cash collateral and postpetition debtor-in-

possession financing.

13.      Notwithstanding the relief granted herein and any actions taken hereunder,

nothing contained in the Motion or this Order or any payment made pursuant to this Order shall

constitute, nor is it intended to constitute, an admission as to the validity or priority of any claim

or lien against the Debtor, a waiver of the Debtor's rights to subsequently dispute such claim or lien, or the assumption or adoption of any agreement, contract, or lease under section 365 of the Bankruptcy Code.

14.     Adequate notice of the Motion has been provided.  Such notice satisfies the requirements of Bankruptcy Rule 6004(a).

15.     Notwithstanding Bankruptcy Rule 6004(h), 7062, and 9014, the terms and conditions of this Order are immediately effective and enforceable upon its entry.

16.     The Debtor is authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

17.     This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.


Dated: _____, 2016
          Wilmington, Delaware

_____
THE HONORABLE LAURIE SELBER SILVERSTEIN
UNITED STATES BANKRUPTCY JUDGE