**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

```
------------------------------------------------------  x
                                                        :
In re:                                                  :      Chapter 11
                                                        :
OUTER HARBOR TERMINAL, LLC,¹                            :      Case No. 16-10283 (LSS)
                                                        :
                                                        :
                        Debtor.                         :
------------------------------------------------------  x
```

**DEBTOR'S MOTION FOR ENTRY OF ORDER (I) AUTHORIZING
DEBTOR TO (A) CONTINUE DEBTOR'S INSURANCE POLICIES AND
(B) PAY CERTAIN OBLIGATIONS IN RESPECT THEREOF POSTPETITION;
AND (II) AUTHORIZING AND REQUIRING BANKS AND FINANCIAL
INSTITUTIONS TO PAY ALL CHECKS AND ELECTRONIC
PAYMENT REQUESTS RELATING TO THE FOREGOING**

Outer Harbor Terminal, LLC, the debtor and debtor-in-possession (the "Debtor") in the above-captioned chapter 11 case, hereby files this motion (the "Motion") seeking entry of an order, substantially in the form attached hereto as **Exhibit A**: (i) authorizing the Debtor, in its sole discretion, to (a) maintain and continue to honor certain Insurance Policies (as defined herein) and related agreements and programs (the "Insurance Programs") (including the renewal of those Insurance Policies and agreements in case the Insurance Policies and agreements expire during this chapter 11 case as described in this Motion) and (b) pay certain obligations in respect thereof including, without limitation, the payment of all premiums, premium financing payments, claims, deductibles, administrative expenses, taxes, and all other charges and expenses incurred in connection with the Insurance Programs (collectively, the "Insurance Obligations"), on an uninterrupted basis, consistent with the Debtor's practices in effect prior to the commencement of this chapter 11 case, whether such Insurance Obligations relate to the period

---

¹ The last four digits of the Debtor's federal tax identification number are 2070. The Debtor's principal place of business is located at 1599 Maritime Street, Oakland, CA 94607.

prior to or after the commencement of this chapter 11 case; (ii) authorizing and requiring banks and other financial institutions to receive, process, honor, and pay all checks and electronic payment requests relating to the foregoing; and (iii) granting certain related relief, as described more fully herein.  In support of this Motion, the Debtor respectfully states as follows:

## Jurisdiction

1.       This court (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). The Debtor consents to the entry of a final order by the Court in connection with this Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

2.       Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.       The statutory bases for the relief requested herein are section 105(a) and 363(b) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

## Background

4.       On February 1, 2016 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtor continues to operate its business as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No party has requested the appointment of a trustee or examiner and no committee has been appointed or designated in this chapter 11 case.

5.       Formed in 2009, the Debtor is a privately-owned, limited liability company headquartered in Oakland, California that provides container terminal operations and stevedore

services at the Port of Oakland (the "Port"), the fourth largest port on the west coast of the United States.  The Debtor's principal operations consist of: (i) the offloading and onloading of containers from cargo ships that berth at the Port; (ii) loading the offloaded containers on to trucks so that they may delivered from the Port to their ultimate domestic destination; and (iii) providing various logistical services to the Debtor's customers in connection with the foregoing.  The Debtor operates from leased berths and terminal space that are owned by the Port.

6.      Prior to the Petition Date, following years of the Debtor operating at a loss and sustaining material, negative cash flows, the Debtor's members voted to terminate and wind down the Debtor's business operations.  The Debtor commenced the wind down on or about January 19, 2016 and intends to continue that process through the chapter 11 case.

7.      Additional information regarding the Debtor's business, assets, capital structure, and the circumstances leading to the filing of this chapter 11 case is set forth in the *Declaration of Heather Stack, Chief Financial Officer, in Support of Chapter 11 Petition and First Day Pleadings of Outer Harbor Terminal, LLC, Debtor and Debtor in Possession* (the "First Day Declaration"), which is being filed contemporaneously herewith.

### Insurance Policies and Related Payment Obligations

8.      In the ordinary course of business, the Debtor maintains approximately eleven (11) insurance policies (each an "Insurance Policy," and collectively, the "Insurance Policies"), all of which are administered through Ports Insurance Company Inc. ("PIC"), a captive insurance company that is an affiliate of the Debtor's indirect parent.  Specifically, PIC underwrites directly six (6) Insurance Policies under which the Debtor is a named insured (i.e., coverage for federal workers' compensation, state workers' compensation, cargo and marine general liability, property and terrorism).  In addition, Ports America Group, Inc. ("PAG"), the indirect parent of

one of the Debtor's members, commercially purchases five (5) Insurance Policies (the "<u>PAG Policies</u>"), where the Debtor has been included as a named insured (<u>i.e.</u>, coverage for state workers' compensation, automobile liability, marine terminal operators and general liability, professional and fiduciary, and domestic property and business interruption).   A list of the Insurance Policies is set forth on **<u>Exhibit 1</u>** to the proposed order attached hereto.

9.   On a yearly basis, PIC, collectively on behalf of certain affiliates of PAG (including the Debtor), prepays the third party commercial carriers that underwrite the PAG Policies the premiums associated with those policies.  As part of a budgeting process that occurs in the fall of each year, PIC allocates the prepayment amount for the PAG Policies, as well as the premiums PIC charges for the policies it directly underwrites, among the PAG affiliates (including the Debtor) for reimbursement.  On a monthly basis, PAG invoices each relevant PAG affiliate, including the Debtor, for its allocable share of these premiums and collects such amounts for reimbursement to PIC (the "<u>Insurance Premiums</u>").  The Debtor estimates that the aggregate Insurance Premiums for calendar year 2016, together with any associated taxes and fees, totals approximately $8,390,000 (a monthly expense of approximately $699,000).   The Debtor does not finance any premium payments owed under the Insurance Policies through any third-party premium financing company.

10.   All Insurance Premiums are fixed, with the exception of those owed under the United States Longshore and Harbor Workers Compensation Act ("<u>USL&H</u>"), a federal workers' compensation law that applies to maritime employees who work on or over navigable waters in or adjacent to the United States.  The Insurance Premiums associated with USL&H are variable with actual premiums being determined based on actual payrolls reported monthly. Insurance Premiums for USL&H workers' compensation are a material part of the Debtor's

overall insurance expense estimated for calendar year 2016 at an annual amount of approximately $5.4 million, based on a projected annual payroll of approximately $60.7 million.

11.     The Insurance Policies, as centrally administered through PIC, are designed to provide almost all insurance lines with no deductibles, and all other taxes and fees are included in the monthly allocations, except for (i) the professional liability program (including, among others, directors and officers liability, employment practices liability, fiduciary liability, crime liability), which has a variety of standard deductibles, and (ii) the PIC-insured property damage program, which has a nominal $25,000 deductible.

12.     The Debtor also pays an annual allocation associated with brokerage fees, estimated at approximately $106,000 for calendar year 2016.  In addition, the Debtor pays an annual fee to PIC pursuant to a risk management services agreement, estimated at approximately $77,000 for calendar year 2016.

13.     The Debtor believes that, as of the Petition Date, there are no premiums or other amounts under any of the Insurance Policies that are due and owing.  However, out of an abundance of caution, the Debtor is seeking authority to pay any such amounts that may be necessary to maintain the Insurance Policies presently in effect.

14.     Continuation of the Insurance Policies is essential to the preservation of the value of the Debtor's business, properties, and assets, and its ability to safely and efficiently implement an orderly wind-down of its operations.  Moreover, in many cases, coverage provided by the Insurance Policies is required by the regulations, laws, and contracts that govern the Debtor's commercial activities, including the operating guidelines issued by the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee").  Accordingly, the Debtor believes that it is essential that it be able to maintain the Insurance Programs, including to pay

any associated amounts that may be unpaid as of the Petition Date, renew policies in the ordinary course of business, and amend, revise, extend, supplement, change, and enter into new insurance coverage as needed in its business judgment without obtaining further order of the Court.

## **Relief Requested**

15.     The Debtor seeks entry of an order, substantially in the form attached hereto as **Exhibit A**:  (i) authorizing, but not directing, the Debtor, in its sole discretion, to (a) maintain and continue to honor the Insurance Programs (including the renewal of those Insurance Policies and agreements in case the policies and agreements expire during this chapter 11 case) and (b) pay the Insurance Obligations, on an uninterrupted basis, consistent with the Debtor's practices in effect prior to the commencement of this chapter 11 case, whether such Insurance Obligations relate to the period prior to or after the commencement of this chapter 11 case; (ii) authorizing and requiring banks and other financial institutions to receive, process, honor, and pay all checks and electronic payment requests relating to the foregoing; and (iii) granting certain related relief.

## **Basis for Relief**

**I.      Maintenance of Insurance Policies is Required by Bankruptcy Code and U.S. Trustee Operating Guidelines**

16.     The failure to maintain the Insurance Policies would have a material adverse effect on the Debtor's businesses and the value of the Debtor's estate available for creditors as it winds down operations.  Section 1112(b)(4)(C) of the Bankruptcy Code provides that "failure to maintain appropriate insurance that poses a risk to the estate or to the public" is "cause" for mandatory conversion or dismissal of a chapter 11 case. 11 U.S.C. § 1112(b)(4)(C). Furthermore, insurance coverage is required by the U.S. Trustee's operating guidelines as well as the laws of the jurisdiction in which the Debtor operates.

6

17.     The Debtor's payment in the ordinary course of any prepetition obligations under the Insurance Policies that come due after the Petition Date is warranted under section 363(b) and the doctrine of necessity.  Section 363 of the Bankruptcy Code provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Under section 363(b), courts in this District require only that the debtor "show that a sound business purpose" justifies the proposed use of property.  Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.), 242 B.R. 147, 153 (D. Del. 1999); see also In re Phoenix Steel Corp., 82 B.R. 334, 335-36 (Bankr. D. Del. 1987) (requiring "good business reason" for use under section 363(b) of the Bankruptcy Code).  Moreover, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." Comm. Of Asbestos-Related Litigs. v. Johns-Manville Corp.(In re Johns-Manville Corp.), 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986); see also Stanziale v. Nachtomi (In re Tower Air, Inc.), 416 F.3d 229, 238 (3d Cir. 2005) ("Overcoming the presumptions of the business judgment rule on the merits is a near-Herculean task.").

18.     Further, section 105(a) of the Bankruptcy Code further provides that a court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code, pursuant to the "doctrine of necessity."  11 U.S.C. § 105(a).  The "doctrine of necessity" functions in a chapter 11 case as a mechanism by which the bankruptcy court can exercise its equitable power to allow payment of critical prepetition claims not explicitly authorized by the Bankruptcy Code and further supports the relief requested herein.  See Friedman's Liquidating Trust v. Roth Staffing Cos. L.P. (In re

7

Friedman's Inc.), 738 F.3d 547, 560 (3d. Cir. 2013) (describing policy of equal distribution among similarly situated creditors and noting, "'Critical vendors,' like Roth Staffing, can similarly be given preferred treatment under Section 105 and Section 363."); In re Lehigh & New England Ry. Co., 657 F.2d 570, 581 (3d Cir. 1981) (holding that court may authorize payment of prepetition claims if such payment is essential to debtor's continued operation); see also In re Just for Feet, Inc., 242 B.R. 821, 824-25 (D. Del. 1999) (holding that section 105(a) of Bankruptcy Code "provides a statutory basis for payment of pre-petition claims" under doctrine of necessity); In re Columbia Gas Sys., Inc., 171 B.R. 189, 191-92 (Bankr. D. Del. 1994) (explaining that doctrine of necessity is standard in Third Circuit for enabling court to authorize payment of prepetition claims prior to confirmation of reorganization plan).  As described above, continuation of the Insurance Policies is essential to preserve the value of Debtor's assets and minimize exposure to risk as the Debtor implements an orderly wind-down of its operations during this chapter 11 case.  Indeed, it is essential that the Debtor carries the Insurance Policies in its day-to-day operations, or it runs the risk of, among other harms, having operations prematurely shut down or incurring financial responsibility, and legal liability, for potential occurrences not covered by insurance.  Accordingly, in order to avoid significant interruptions to the Debtor's ongoing wind-down process and to preserve and maximize the value of its estate for its creditors, it is imperative that the Debtor continue carrying its Insurance Policies during this chapter 11 case consistent with its strategic wind-down objectives.

19.    Accordingly, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, this Court may grant the relief requested herein.

**II.    Court Should Authorize Banks to Honor and Pay Checks Issued and Electronic Funds Transferred to Pay Insurance Obligations**

20.    The Debtor further requests that the Court authorize and direct its banking institutions and all other applicable banks and other financial institutions to receive, process, honor and pay any and all checks drawn or electronic funds relating to the prepetition premiums, whether such checks were presented prior to, or after, the Petition Date.  Under the Debtor's existing cash management system, checks or wire transfer requests can be readily identified as relating to an authorized payment of the prepetition premiums.  As such, the Debtor believes that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently.  The Debtor also seeks authority to issue new postpetition checks or effect new electronic fund transfers, on account of the prepetition premiums to replace any prepetition checks or electronic fund transfer requests that may be dishonored or rejected as a result of the commencement of this chapter 11 case.  Finally, based on the Debtor's proposed debtor-in-possession financing facility and anticipated receipts, the Debtor expects that it has sufficient liquidity to pay such amounts as they become due in the ordinary course of the Debtor's business.

**Bankruptcy Rule 6003 Is Satisfied**

21.    Bankruptcy Rule 6003 empowers a court to grant relief within the first twenty-one (21) days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm."  For reasons discussed herein, authorizing the Debtor to continue insurance coverage entered into prepetition, and granting the other relief requested herein is integral to the Debtor's ability to transition its operations into this chapter 11 case and implement an orderly wind-down of its operations.  Failure to receive such authorization and other relief during the first twenty-one (21) days of this chapter 11 case would severely disrupt

the Debtor's operations at this critical juncture and impede its ability to wind down operations consistent with its projected strategic timeline.  For the reasons discussed herein, the relief requested is necessary in order for the Debtor to operate its business in the ordinary course, preserve the ongoing value of the Debtor's operations and maximize the value of its estate for the benefit of all stakeholders.  Accordingly, the Debtor submits that it has satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

### Reservation of Rights

22.     Nothing contained herein is intended or should be construed as an admission as to the validity of any claim against the Debtor, a waiver of the Debtor's right to dispute any claim, or an approval or assumption of any agreement, contract, or lease under section 365 of the Bankruptcy Code.  The Debtor expressly reserves its right to contest any claim related to the relief sought herein.  Likewise, if the Court grants the relief sought herein, any payment made pursuant to an order of the Court is not intended to be nor should it be construed as an admission as to the validity of any claim or a waiver of the Debtor's right to subsequently dispute such claim.

### Waiver of Bankruptcy Rule 6004(a) and 6004(h)

23.     To implement the foregoing successfully, the Debtor requests that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtor has established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h) and any other applicable Bankruptcy Rule.

### Notice

24.     The Debtor will provide notice of this Motion to:  (i) the Office of the United States Trustee for the District of Delaware; (ii) the holders of the 20 largest unsecured claims on

a consolidated basis; (iii) any banking or financial institutions that hold the Debtor's accounts; (iv) any insurance provider listed on **Exhibit 1** to the proposed order attached hereto; and (v) any party that has requested notice pursuant to Bankruptcy Rule 2002(i).  As this Motion is seeking "first day" relief, notice of this Motion and any order entered hereon will be served on all parties required by Local Rule 9013-1(m).  The Debtor submits that, in light of the nature of the relief requested and the urgency of the circumstances surrounding this Motion, no other or further notice need be given.

### No Prior Request

25.     The Debtor has not previously sought the relief requested herein from this or any other Court.


[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

WHEREFORE, the Debtor respectfully requests entry of an order, substantially in the form attached hereto as **Exhibit A**:  (i) authorizing, but not directing, the Debtor, in its sole discretion, to (a) maintain and continue to honor the Insurance Programs (including the renewal of those Insurance Policies and agreements in case the Insurance Policies and agreements expire during this chapter 11 case) and (b) pay the Insurance Obligations, on an uninterrupted basis, consistent with the Debtor's practices in effect prior to the commencement of the Debtor's chapter 11 case, whether such Insurance Obligations relate to the period prior to or after the commencement of this chapter 11 case; and (ii) authorizing and requiring banks and other financial institutions to receive, process, honor, and pay all checks and electronic payment requests relating to the foregoing granting; and (iii) granting such further relief as may be appropriate and proper.

Dated:  February 1, 2016
Wilmington, Delaware

Respectfully submitted,

**RICHARDS, LAYTON & FINGER, P.A.**

/s/ Mark D. Collins
Mark D. Collins (No. 2981)
Marisa A. Terranova Fissel (No. 5396)
One Rodney Square
920 North King Street
Wilmington, DE 19801
Telephone:    (302) 651-7700
Facsimile:    (302) 651-7701
Email:        collins@rlf.com
              terranova@rlf.com

-and-

**MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP**
Gregory A. Bray (*pro hac vice* admission pending)
Thomas R. Kreller (*pro hac vice* admission pending)
Haig M. Maghakian (*pro hac vice* admission pending)
601 S. Figueroa Street, 30th Floor
Los Angeles, CA 90017
Telephone:    (213) 892-4000
Facsimile:    (213) 629-5063
Email:        gbray@milbank.com
              tkreller@milbank.com
              hmaghakian@milbank.com

-and-

Dennis F. Dunne
Samuel A. Khalil
28 Liberty Street
New York, NY 10005
Telephone:    (212) 530-5000
Facsimile:    (212) 530-5219
Email:        ddunne@milbank.com
              skhalil@milbank.com

*Proposed Counsel to Debtor and Debtor in Possession*

## Exhibit A

**Proposed Form of Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

```
-------------------------------------------------- x
                                                   :
In re:                                             :        Chapter 11
                                                   :
OUTER HARBOR TERMINAL, LLC,[1]                     :        Case No. 16-10283(LSS)
                                                   :
                                                   :
                      Debtor.                      :
-------------------------------------------------- x
```

**ORDER (I) AUTHORIZING DEBTOR, IN ITS SOLE DISCRETION, TO**
**(A) CONTINUE DEBTOR'S INSURANCE POLICIES AND (B) PAY CERTAIN**
**OBLIGATIONS IN RESPECT THEREOF POSTPETITION; AND (II) AUTHORIZING**
**AND REQUIRING BANKS AND FINANCIAL INSTITUTIONS TO PAY ALL CHECKS**
**AND ELECTRONIC PAYMENT REQUESTS RELATING TO THE FOREGOING**

Upon consideration of the motion (the "Motion")[2] of Outer Harbor Terminal, LLC, the

debtor and debtor-in-possession (the "Debtor") in the above-captioned chapter 11 case, seeking

entry of an order (this "Order"): (i) authorizing the Debtor, in its sole discretion, to (a) maintain

and continue to honor the Insurance Programs (including the renewal of those Insurance Policies

and agreements in case the policies and agreements expire during this chapter 11 case) and

(b) pay certain obligations in respect thereof including, without limitation, the payment of all

premiums, premium financing payments, claims, deductibles, administrative expenses, taxes, and

all other charges and expenses incurred in connection with the Insurance Programs (collectively,

the "Insurance Obligations"), on an uninterrupted basis, consistent with the Debtor's practices in

effect prior to the commencement of the Debtor's chapter 11 case, whether such Insurance

Obligations relate to the period prior to or after the commencement of this chapter 11 case;

(ii) authorizing and requiring banks and other financial institutions to receive, process, honor,

---

[1]     The last four digits of the Debtor's federal tax identification number are 2070.  The Debtor's principal
place of business is located at 1599 Maritime Street, Oakland, CA 94607.

[2]     Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

and pay all checks and electronic payment requests relating to the foregoing; and (iii) granting

certain related relief, all as more fully set forth in the Motion; and upon consideration of the First

Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157

and 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C.

§ 157(b)(2), and that the Court may enter a final order consistent with Article III of the United

States Constitution; and this Court having found that venue of this proceeding and the Motion in

this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that

the relief requested in the Motion is in the best interests of the Debtor's estate, its creditors, and

other parties in interest; and this Court having found that the Debtor's notice of the Motion and

opportunity for a hearing on the Motion were appropriate and no other notice need be provided;

and this Court having reviewed the Motion and having heard the statements in support of the

relief requested therein at a hearing before this Court (the "Hearing"); and this Court having

determined that the legal and factual bases set forth in the Motion and at the Hearing establish

just cause for the relief granted herein; and upon all of the proceedings had before this Court; and

after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.     The Motion is granted as set forth herein.

2.     The Debtor is authorized, but not required, in its sole discretion, to maintain,

continue and renew the Insurance Programs and the Insurance Policies, including those identified

on **Exhibit 1** to this Order, and the Insurance Programs on an uninterrupted basis and in

accordance with the same practices and procedures in effect prior to the commencement of this

chapter 11 case.

3.     The Debtor is authorized, in its sole discretion, to pay any and all Insurance

Obligations related to the Insurance Programs, including any Insurance Obligations that relate to

2

the period before the commencement of this chapter 11 case, without further notice or order of the Court.

4.       The Debtor is authorized, in its sole discretion, to amend, revise, extend, supplement, or change insurance coverage needed in its business judgment without obtaining an order of the Court.

5.       Notwithstanding anything in the Motion or this Order to the contrary, any payment made by the Debtor pursuant to the authority granted herein shall be subject to any order authorizing the Debtor's access to and use of cash collateral and postpetition debtor-in-possession financing.

6.       Notwithstanding the relief granted herein and any actions taken hereunder, nothing contained in the Motion or this Order or any payment made pursuant to this Order shall constitute, nor is it intended to constitute, an admission as to the validity or priority of any claim or lien against the Debtor, a waiver of the Debtor's rights to subsequently dispute such claim or lien, or the assumption or adoption of any agreement, contract, or lease under section 365 of the Bankruptcy Code.

7.       The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations or premium obligations approved herein are authorized and directed to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtor's designation of any particular check or electronic payment request as approved by this Order.

8.       The Debtor is authorized, in its sole discretion, to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests

3

that are dishonored as a consequence of this chapter 11 case with respect to prepetition amounts owed in connection with any Insurance Policies or premium obligation.

9.      Entry of this Order is necessary to avoid immediate and irreparable harm.  The requirements of Bankruptcy Rule 6003(b) have been satisfied.

10.      Adequate notice of and opportunity for a Hearing on the Motion has been provided.  Such notice satisfies the requirements of Bankruptcy Rule 6004(a).

11.      Notwithstanding any applicability Bankruptcy Rules 6004(h), 7062, or 9014, the terms and conditions of this Order are immediately effective and enforceable upon its entry.

12.      The Debtor is authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

13.      This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

Dated:  February _____, 2016
          Wilmington, Delaware
                                                    _____
                                                    THE HONORABLE LAURIE SELBER SILVERSTEIN
                                                    UNITED STATES BANKRUPTCY JUDGE

## Exhibit 1 to Order

### Schedule of Insurance Policies

| | Policy Type | Insurance Carrier | Policy No. | Policy Term | | Total Annual Allocable Premium[1] |
|---|---|---|---|---|---|---|
| | | | | Inception | Expiration | |
| 1. | USL&H Workers' Compensation | Ports Insurance Company ("PIC") | 0100-USL&H-2016 | 1/1/16 | 12/31/16 | $5,403,000 |
| 2. | State Workers' Compensation | PIC | 0200-State Workers Comp-2016 | 1/1/16 | 12/31/16 | $213,000 |
| 3. | Cargo & Marine General Liability | PIC | 0400-Liability Deductible Reimbursement-2016 | 1/1/16 | 12/31/16 | $1,002,000 |
| 4. | Property | PIC | 0300-Property Deductible Reimbursement-2016 | 1/1/16 | 12/31/16 | $263,000 |
| 5. | Terrorism & DIC | PIC | 0500-Terrorism Property-2016 | 1/1/16 | 12/31/16 | $71,000 |
| 6. | Terrorism & DIC | PIC | 0600-Terrorism Liability-2016 | 1/1/16 | 12/31/16 | $54,000 |
| 7. | State Workers' Compensation | Starr Indemnity & Liability Co. | 100 0001309 | 1/1/16 | 1/1/17 | $99,000 |
| 8. | Automobile Liability | Starr Indemnity & Liability Co. | SISIPCA08356116 | 1/1/16 | 1/1/17 | $4,000 |

---

[1] Numbers are approximate and subject to change.

| | Policy Type | Insurance Carrier | Policy No. | Policy Term | | Total Annual Allocable Premium[1] |
|---|---|---|---|---|---|---|
| | | | | Inception | Expiration | |
| 9. | Domestic Property & Business Interruption | Allied World Assurance Co. Ltd. | 0305-4606-1A | 4/1/15 | 4/1/16 | $766,000 |
| | | Alterra Excess & Surplus Insurance Co. | MAX6IM0047548 | 4/1/15 | 4/1/16 | |
| | | Aspen Specialty Insurance Co. | PRA86LY15 | 4/1/15 | 4/1/16 | |
| | | AXIS Surplus Insurance Co. | EAF747907-15 | 4/1/15 | 4/1/16 | |
| | | Chubb Custom Insurance Co. | 44734087-01 | 4/1/15 | 4/1/16 | |
| | | Essex Insurance Co. | MKLX10XP001306 | 4/1/15 | 4/1/16 | |
| | | General Security Indemnity Co. of AZ | T0234451501908 | 4/1/15 | 4/1/16 | |
| | | Homeland Insurance Co. of New York | 795 003 034 | 4/1/15 | 4/1/16 | |
| | | Ironshore Specialty Insurance Co. | 001974901 | 4/1/15 | 4/1/16 | |
| | | Landmark American Insurance Co. | LHT391825 | 4/1/15 | 4/1/16 | |
| | | Lloyd's of London | Various | 4/1/15 | 4/1/16 | |
| | | RSUI Indemnity Co. | NHT391830 | 4/1/15 | 4/1/16 | |
| | | Scottsdale Insurance Co. | FXS0000267 | 4/1/15 | 4/1/16 | |
| | | Starr Surplus Lines Insurance Co. | SLSTPTY10734915 | 4/1/15 | 4/1/16 | |
| | Property Terrorism Reinsurance | Lloyd's of London (lead) | B0901LP1525607000 | 4/1/15 | 4/1/16 | |

| | Policy Type | Insurance Carrier | Policy No. | Policy Term | | Total Annual Allocable Premium[1] |
|---|---|---|---|---|---|---|
| | | | | Inception | Expiration | |
| 10. | Marine Terminal Operators & General Liability – Primary | Lloyd's of London (lead) | B1353DE1501416000 | 10/1/15 | 12/1/16 | $478,000 |
| | Marine Terminal Operators & General Liability – First Excess | Starr Indemnity & Liability Co. | MASILNY00003515 | 10/1/15 | 12/1/16 | |
| | | Lloyd's of London (lead) | B1353DE1501417000 | 10/1/15 | 12/1/16 | |
| | Marine Terminal Operators & General Liability – Second Excess | Llyod's of London (lead) | B1353DE1501482000 | 10/1/15 | 12/1/16 | |
| | | Starr Indemnity & Liability Co. | MASILNY00003715 | 10/1/15 | 12/1/16 | |
| | | Navigators Insurance Co. | NY15LIA00314801 | 10/1/15 | 12/1/16 | |
| | | XL Specialty Insurance Co. | UM00019775EL15A | 10/1/15 | 12/1/16 | |
| | | Endurance American Insurance Co. | OMX10004225402 | 10/1/15 | 12/1/16 | |
| | | StarNet Insurance Co. | BOUM-A-15-0493 | 10/1/15 | 12/1/16 | |
| 11. | Professional, Fiduciary, Kidnap & Ransom, etc. | National Union Fire Insurance Co. of Pittsburgh, PA | 01-592-41-09 | 7/30/15 | 7/30/16 | $37,000 |
| | | National Union Fire Insurance Co. of Pittsburgh, PA | 15903424 | 7/30/15 | 7/30/16 | |
| | | Starr Indemnity & Liability Co. | SISIXFL21128415 | 7/30/15 | 7/30/16 | |
| | | Westchester Fire Insurance Co. | G24220126 005 | 7/30/15 | 7/30/16 | |
| | | Houston Casualty Co. | U715-85699 | 7/30/15 | 7/30/18 | |
| | | Hiscox Insurance Co. | UCS2709438.15 | 7/30/15 | 7/30/16 | |