**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

----------------------------------------------------- x
                                                       :
In re:                                                 :        Chapter 11
                                                       :
OUTER HARBOR TERMINAL, LLC,[1]                         :        Case No. 16-10283 (LSS)
                                                       :
                                                       :        **Hearing Date: March 16, 2016 at 10:00 a.m. EST**
                              Debtor.                  :        **Objection Deadline: March 9, 2016 at 4:00 p.m. EST**
----------------------------------------------------- x

**MOTION FOR AN ORDER (A) APPROVING THE**
**DEBTOR'S EMPLOYEE INCENTIVE PROGRAM**
**AND (B) GRANTING CERTAIN RELATED RELIEF**

Outer Harbor Terminal, LLC, the debtor and debtor-in-possession (the "Debtor") in the
above-captioned chapter 11 case, hereby files this motion (the "Motion") seeking entry of an
order, substantially in the form attached hereto as **Exhibit A**:  (i) approving the employee
incentive program and (ii) granting certain related relief, as described more fully herein.   In
support of this Motion, the Debtor respectfully states as follows:

**Jurisdiction**

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and
1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the
Court may enter a final order consistent with Article III of the United States Constitution.

2.      Venue of this proceeding and this Motion in this District is proper pursuant to 28
U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested herein are sections 105(a), 363(b), and
503(c)(3) of the Bankruptcy Code, as supplemented by Bankruptcy Rule 6004.

---

[1]     The last four digits of the Debtor's federal tax identification number are 2070.  The Debtor's principal place of
business is located at 1599 Maritime Street, Oakland, CA 94607.

**Background**

4.      On February 1, 2016 (the "Petition Date"), the Debtor filed a voluntary petition

for relief under chapter 11 of the Bankruptcy Code.  The Debtor continues to operate its business

as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No

party has requested the appointment of a trustee or examiner and no committee has been

appointed or designated in this chapter 11 case.

5.      Formed in 2009, the Debtor is a privately-owned, limited liability company

headquartered in Oakland, California that provides container terminal operations and stevedore

services at the Port of Oakland (the "Port"), the fourth largest port on the west coast of the

United States.  The Debtor's principal operations consist of: (i) the offloading and onloading of

containers from cargo ships that berth at the Port; (ii) loading the offloaded containers on to

trucks so that they may be delivered from the Port to their ultimate domestic destination; and

(iii) providing various logistical services to the Debtor's customers in connection with the

foregoing.  The Debtor operates from leased berths and terminal space that are owned by the

Port.

6.      Prior to the Petition Date, following years of the Debtor operating at a loss and

sustaining material, negative cash flows, the Debtor's members voted to terminate and wind

down the Debtor's business operations.  The Debtor commenced the wind down on or about

January 19, 2016 and intends to continue that process through the chapter 11 case.

7.      Additional information regarding the Debtor's business, assets, capital structure,

and the circumstances leading to the filing of this chapter 11 case is set forth in the *Declaration*

*of Heather Stack, Chief Financial Officer, in Support of Chapter 11 Petition and First Day*

*Pleadings of Outer Harbor Terminal, LLC, Debtor and Debtor in Possession* [Docket No. 13] (the "First Day Declaration").

## The Proposed EIP

8.    As more fully described in the First Day Declaration, prior to the Petition Date, the Debtor commenced, and is now continuing to implement through this chapter 11 case, an orderly and efficient wind down of its business.    While the Debtor's employees have been instrumental in allowing the Debtor's business operations to continue relatively uninterrupted notwithstanding the Debtor's bankruptcy filing, it is imperative that the employees be incentivized to continue providing this critical support to the Debtor.   The employees' skills and institutional knowledge are crucial to maximizing the value of the Debtor's estate during this chapter 11 case for the benefit of the Debtor's stakeholders.   Indeed, the employees will enhance the Debtor's ability to generate revenue through the collection of receivables, monetizing assets, and minimizing claims against the Debtor's estate.    Thus, as described more fully below, the Debtor is seeking to offer an incentive plan (the "EIP")[2] to substantially all of the Debtor's non-insider employees (the "EIP Participants").[3]

## Terms of the EIP

9.    To provide maximum incentive to the EIP Participants, all compensation associated with the EIP generally will be based upon the achievement of two separate benchmarks.   One-third of the EIP Participants' incentive awards, in the aggregate amount of $391,791.46, will be payable if the Debtor successfully completes on or before March 31, 2016 all marine operations, including the servicing of vessels and commitments to the Debtor's customers in accordance with existing contracts.    The remaining two-thirds of the EIP

---

[2]    The form incentive plan agreement is attached hereto as **Exhibit B**.

[3]    The EIP Participants are identified, by title and amount of incentive awards broken up by applicable benchmark, on **Exhibit C** attached hereto.

Participants' incentive awards, in the aggregate amount of $784,759.46, will be payable upon the Debtor successfully winding down all terminal operations on or before April 30, 2016. Altogether, under the EIP, the maximum individual award opportunities will range from $2,550.00 to $96,492.31 for the EIP Participants, with an average maximum incentive award opportunity of $26,145.58. The maximum cost of incentive award opportunities under the EIP, assuming all EIP Participants remain eligible and both benchmarks are satisfied, will be $1,176,550.92.

10.    Awards will be forfeited if an EIP Participant resigns voluntarily or is involuntarily terminated for cause. However, the incentive awards will be paid to an EIP Participant if such EIP Participant's employment by the Debtor is terminated involuntarily without cause. Also in the event that an EIP Participant's employment by the Debtor is terminated without cause and not due to the EIP Participant's resignation, the Debtor will pay such EIP Participant a one-time lump sum payment equal to three months of COBRA insurance premiums.[4] In addition, in the event of an EIP Participant's termination of employment, such EIP Participant shall remain eligible to receive pay in lieu of accrued but unused floating holidays and vacation days that have not been taken as of the date of termination.[5] Furthermore, in consideration for any payments or benefits each EIP Participant receives or is eligible to

---

[4]    The Debtor currently estimates that the maximum total for such COBRA payments would be $171,082.26.

[5]    The Debtor currently estimates that the maximum total for accrued but unused floating holidays and vacation days is $48,089.88 and $250,643.54, respectively. However, these estimates will change slightly as the EIP Participants continue to accrue floating holidays and vacation days between the time of the filing of this Motion and April 30, 2016, the projected completion date for the wind down of the Debtor's operations.

The Debtor has requested authorization to honor and continue to pay prepetition obligations to eligible employees for accrued and vacation and floating holidays pursuant to the *Debtor's Motion for Entry of Interim and Final Orders (I) Authorizing Debtor to (A) Pay Prepetition Wages, Salaries, and Other Compensation, and Employee Benefits, and (B) Continue Existing Employee Benefit Plans and Programs, (II) Authorizing Banks and Financial Institutions to Pay All Checks and Electronic Payment Requests Relating to the Foregoing, and (III) Scheduling a Final Hearing* [Docket No. 6], which the Court is scheduled to consider on a final basis at a hearing on March 1, 2016 at 10:00 a.m. EST.

receive under the EIP, such EIP Participant will agree to release the Debtor and its affiliates, representatives, and other related persons or entities from, among other things, any claims for severance payments or benefits of any kind and any federal or state statutory claims.

**Relief Requested**

11.    The Debtor seeks entry of an order, substantially in the form attached hereto as **Exhibit A**:  (i) approving the EIP and (b) granting certain related relief.

**Basis for the Relief Requested**

12.    Filing for bankruptcy creates special challenges for companies regarding employees' morale and productivity.  These complications are particularly acute for a debtor who is winding down its business and needs to motivate employees who will eventually no longer be employed following the wind down process.  This, in turn, may decrease revenues or sale proceeds generated during the chapter 11 case, to the detriment of a debtor's estate and its creditors.  Therefore, bankruptcy courts often authorize incentive plans, so long as they are tailored in an effort to incentivize job performance and avoid the administrative burdens that would arise in connection with finding new employees.

13.    In this case, the Debtor has carefully designed the EIP to ensure a successful wind down process and to maximize the value of its estate.  As the Debtor continues to implement an orderly and efficient wind down of its operations, it is crucial that the Debtor maintains the loyalty of its employees and motivate them to exert all possible efforts to maximize the value of the Debtor's estate through the wind down process.  Each of the EIP Participants has critical skills and institutional knowledge that are essential to the Debtor's wind down efforts.

-5-

I.    **Implementation of the EIP is a Valid Exercise of the Debtor's Business Judgment Pursuant to Section 363(b) of the Bankruptcy Code, and Does Not Violate Section 503(c) of the Bankruptcy Code**

A.    **The Decision to Implement the EIP Constitutes a Valid Exercise of the Debtor's Sound Business Judgment Pursuant to Section 363(b) of the Bankruptcy Code**

14.    The Court may authorize the Debtor to implement the EIP pursuant to section 363(b)(1) of the Bankruptcy Code.  Section 363(b)(1) provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(l).  The use, sale, or lease of property of the estate, other than in the ordinary course of business, is authorized when a "sound business purpose" justifies such action.  See, e.g., Myers v. Martin (In re Martin), 91 F.3d 389, 395 (3d Cir. 1996) (noting that under normal circumstances, courts defer to trustee's judgment concerning use of property under section 363(b) when there is legitimate business justification); In re Delaware & Hudson Ry. Co., 124 B.R. 169, 176 (D. Del. 1991) (explaining that Third Circuit has adopted "sound business purpose" test to evaluate motions brought pursuant to section 363(b)).

15.    Historically, courts have approved employee compensation programs that are outside of the ordinary course of business pursuant to section 363(b) of the Bankruptcy Code. See, e.g., In re Allen Family Foods, Inc., Case No. 11-11764 (KJC) (Bankr. D. Del. July 13, 2011) (approving executive and management incentive plan in connection with closing a sale); In re Global Home Prods., LLC, 369 B.R. 778, 784 (Bankr. D. Del. 2007) ("The reasonable use of incentives and performance bonuses are considered the proper exercise of a debtor's business judgment."); In re Nobex Corp., Case No. 05-20050 (MFW), 2006 Bankr. LEXIS 417, at *6-7 (Bankr. D. Del. Jan. 19, 2006) (approving incentive pay outside of ordinary course where it was "an appropriate exercise of the debtor's business judgment").

16.     Here, the EIP is narrowly tailored to enable the Debtor to achieve an orderly and efficient wind down.  As discussed above, the EIP Participants, with their unique knowledge of the Debtor's business and operations, are an essential and indispensable aspect of the wind down. The EIP's benchmarks help ensure that the EIP Participants will work towards completing the marine operations and, subsequently, all other terminal operations in a timely manner.  In turn, a prompt wind down of operations will help minimize the administrative expenses incurred by the estate and allow the Debtor to focus on the final liquidations and sales of the Debtor's assets.

17.     Based on the foregoing, the Debtor submits that the EIP provides an efficient and effective mechanism necessary to motivate the EIP Employees to achieve the benchmarks. Therefore, implementation of the EIP is an appropriate exercise of the Debtor's business judgment under section 363(b)(1) of the Bankruptcy Code and should be approved by the Court.

### B.  The Incentive Program Complies With Section 503(c) of the Bankruptcy Code

18.     Section 503(c) of the Bankruptcy Code provides criteria for courts to use in approving certain types of payments to insiders and "other transfers or obligations that are outside of the ordinary course of business."  11 U.S.C. § 503(c).  Section 503(c) contains: (1) strict limitations on retention plans for insiders; (2) strict limitations on severance payments to insiders; and (3) standards governing other transfers or obligations that are outside the ordinary course of business and not justified by the facts and circumstances of the case, including transfers made to, or obligations incurred for the benefit of, officers, managers, or consultants hired after the date of the filing of the petition.  Id.  Specifically, section 503(c) provides:

Notwithstanding subsection (b), there shall neither be allowed, nor paid—

(1) a transfer made to, or an obligation incurred for the benefit of, an insider of the debtor for the purpose of inducing such person to remain with the debtor's business, absent a finding by the court based on evidence in the record that—

(A) the transfer or obligation is essential to retention of the person because the individual has a bona fide job offer from another business at the same or greater rate of compensation;

(B) the services provided by the person are essential to the survival of the business; and

(C) either—

(i) the amount of the transfer made to, or obligation incurred for the benefit of, the person is not greater than an amount equal to 10 times the amount of the mean transfer or obligation of a similar kind given to nonmanagement employees for any purpose during the calendar year in which the transfer is made or the obligation is incurred; or

(ii) if no such similar transfers were made to, or obligations were incurred for the benefit of, such nonmanagement employees during such calendar year, the amount of the transfer or obligation is not greater than an amount equal to 25 percent of the amount of any similar transfer or obligation made to or incurred for the benefit of such insider for any purpose during the calendar year before the year in which such transfer is made or obligation is incurred;

(2) a severance payment to an insider of the debtor, unless—

(A) the payment is part of a program that is generally applicable to all full-time employees; and

(B) the amount of the payment is not greater than 10 times the amount of the mean severance pay given to nonmanagement employees during the calendar year in which the payment is made; or

(3) other transfers or obligations that are outside the ordinary course of business and not justified by the facts and circumstances of the case, including transfers made to, or obligations incurred for the benefit of, officers, managers, or consultants hired after the date of the filing of the petition.

11 U.S.C. § 503(c).

19.    Neither section 503(c)(l) nor 503(c)(2) is applicable to the instant Motion, as the EIP is purely incentive based and is not a retention or severance plan.  Even if such sections were applicable, as set forth below, none of the EIP Participants are "insiders" of the Debtor, as such term is defined in the Bankruptcy Code.  Furthermore, the EIP complies with section 503(c)(3) of the Bankruptcy Code.  As such, the EIP should be approved by the Court.

i. <u>Sections 503(c)(l) and (2) are not applicable to the EIP</u>

20.    Pursuant to the statute's plain language, section 503(c)(l) of the Bankruptcy Code pertains solely to *retention* plans, and section 503(c)(2) only addresses the requirements for *severance* plans.  Neither section applies to performance-based *incentive* plans such as the EIP. <u>See, e.g.</u>, <u>Global Home Prods.</u>, 369 B.R. at 783 ("If [the proposed plans] are plans intended to incentivize management, the analysis utilizes the more liberal business judgment review under § 363."); <u>In re Nobex Corp.</u>, Case No. 05-20050 (MFW), 01/12/06 Hearing Tr. at 67 (Bankr. D. Del. 2006); <u>In re Calpine Corp.</u>, Case No. 05-60200 (BRL), 04/26/2006 Hearing Tr. at 87 (Bankr. S.D.N.Y. 2006).

21.    If sections 503(c)(1) and 503(c)(2) are not implicated, approval of a proposed incentive plan is governed by the less stringent test embedded in section 503(c)(3).  The U.S. Bankruptcy Court for the Southern District of New York has held that:

> If sections 503(c)(1) and (c)(2) are not operative, a court may consider whether the payments are permissible under section 503(c)(3), which limits payments made to management and employees, among others, outside of the ordinary course, unless such payments are shown to be justified under the facts and circumstances of the chapter 11 case.  As one treatise points out, the test in section 503(c)(3) appears to be no more stringent a test than the one courts must apply in approving any administrative expense under section 503(b)(l)(A).

<u>In re Dana Corp.</u>, 358 B.R. 567, 576 (Bankr. S.D.N.Y. 2006).

22.    The EIP is not a retention plan.  Courts have held that 503(c)(1) does not apply to a compensation program that "properly incentivizes the [relevant employees] to produce and increase the value of the estate . . ." <u>Id</u>. at 584; <u>In re Nellson Nutraceutical, Inc.</u>, 369 B.R. 787, 802 (Bankr. D. Del. 2007) (citing <u>Dana</u>); <u>In re Borders Grp., Inc.</u>, 453 B.R. 459, 472 (Bankr. S.D.N.Y. 2011).  Indeed, incentive programs that are outside the scope of section 503(c)(1) include those that (i) "increase [the employees] pre-bankruptcy job responsibilities to achieve the

-9-

bonus requirements," <u>Borders</u>, 453 B.R. at 472; (ii) "motivate[] the employees to do a 'great job' in connection with the matters that those employees could reasonably be expected to influence," <u>Nellson</u>, 369 B.R. at 803; and (iii) influence the beneficiaries to "perform[] in response to financial incentive and not merely remain with the [d]ebtors . . ." or require them "to remain with [d]ebtors through the emergence from bankruptcy . . . ." <u>Global Home Prods.</u>, 369 B.R. at 787.

23.     The EIP is an incentive-based program, is not primarily retentive in nature, and does not require the EIP Participants to simply remain employed by the Debtor.  The performance-based program here provides for targeted payments to certain employees only if they and, through their hard work and continued efforts, the Debtor successfully meet objective performance criteria that relate to their respective area of expertise and influence and are beyond their pre-bankruptcy responsibilities.  While the EIP Participants' pre-bankruptcy responsibilities did relate to the subject of their particular milestones, those responsibilities will be increased to include winding-down the Debtor's operations in an efficient and timely manner.

24.     Additionally, the proposed incentive structure is apparent and reasonable in light of the facts and circumstances of this chapter 11 case.  The EIP Participants are incentivized to realize each of the benchmarks steps with minimal interruption and efficiency.  While, like all incentive programs, the proposed program has some retentive qualities, it is primarily incentive-based and reasonable under the facts and circumstance of the chapter 11 case and the Debtor's strategic wind down goals.  <u>See, e.g.</u>, <u>Nellson</u>, 369 B.R. at 802 ("Any payment to an employee, including regular wages, has at least a partial purpose of retaining the employee.").

25.     It is also worth noting that the EIP is not a severance plan as described in section 503(c)(2) of the Bankruptcy Code.  The EIP in no way seeks to create any severance obligations, and is purely an incentive-based plan that results in bonus payments for employees that meet

particular milestones.  Therefore, the EIP does not violate sections 503(c)(1) or 503(c)(2) of the Bankruptcy Code.

> ii.  The KEIP Does Not Violate Section 503(c)(3) of the Bankruptcy Code.

26.     As set forth above, the KEIP does not violate sections 503(c)(1) or 503(c)(2) of the Bankruptcy Code.  Similarly, the KEIP does not violate section 503(c)(3) of the Bankruptcy Code, which provides:

> Notwithstanding subsection (b), there shall neither be allowed, nor paid-

> (3) other transfers or obligations that are outside of the ordinary course of business and not justified by the facts and circumstances of the case, including transfers made to, or obligations incurred for the benefit of, officers, managers, or consultants  hired  after  the date of the filing of the petition.

11 U.S.C. § 503(c)(3).  Courts have unanimously held that the "business judgment" standard is the proper standard for determining whether proposed incentive programs and payments thereunder are permissible under section 503(c)(3) of the Bankruptcy Code.  See, e.g., Global Home Prods., 369 B.R. at 784; In re Werner Holding Co., Inc., Case No. 06-10578 (KJC) (Bankr. D. Del. July 28, 2006, Aug. 28, 2006, and Dec. 20, 2006); In re Riverstone Networks, Inc., Case No. 06-10110 (CSS) (Bankr. D. Del. Mar. 28, 2006); In re Pliant Corp., Case No. 06-10001 (MFW) (Bankr. D. Del. Mar. 14, 2006).

27.     In In re Nobex Corp., Judge Walrath stated that:

> [Section] (c)(3) was meant to provide a standard, albeit not as clear, for any other transfers or obligations outside of the ordinary course of business . . .  I read (c)(3) to be the catch-all and the standard under (c)(3) for any transfers or obligations made outside of the ordinary course of business are those that are justified by the facts and circumstances of the case . . .  I find it quite frankly nothing more than a reiteration of the standard under 363 . . . under which courts had previously authorized transfers outside of the ordinary course of business and that [are], based on the business judgment of the debtor . . . .

January 12, 2006 Hearing Tr. at 86-87, In re Nobex Corp., Case No. 05-20050 (MFW) (Bankr. D. Del.) (approving the management incentive plan).  Similarly, in In re Dana Corp., Judge

Lifland agreed with Judge Walrath, stating that management incentive programs should be evaluated under the business judgment standard, which requires a debtor to satisfy the Court's inquiry into factors such as:

- Is there a reasonable relationship between the plan proposed and the results to be obtained, i.e., will the key employee stay for as long as it takes for the debtor to reorganize or market its assets, or in the case of a performance incentive, <u>is the plan calculated to achieve the desired performance</u>? (emphasis added)

- Is the cost of the plan reasonable in the context of the debtors' assets, liabilities and earning potential?

- Is the scope of the plan fair and reasonable; does it apply to employees; does it discriminate unfairly?

- Is the plan or proposal consistent with industry standards?

- What were the due diligence efforts of the debtor in investigating the need for a plan; analyzing which key employees need to be incentivized; what is available; what is generally applicable in a particular industry?

- Did the debtor receive independent counsel in performing due diligence and in creating and authorizing the incentive compensation?

<u>Dana</u>, 358 B.R. at 576-77 (citations omitted).  Moreover, Judge Lifland noted that courts generally take a "holistic" view, and measure, of compensation packages.  <u>Id</u>. at 571.

28.    The Debtor has a sound business purpose for establishing the EIP, and it satisfies the relevant factors articulated in <u>Dana</u>.  First, the EIP is a performance-based plan that has been narrowly crafted to motivate the EIP Participants to "achieve the desired performance" reflected in milestones that are critical to the successful implementation of the Debtor's strategic wind down.  Indeed, the EIP Participants are only entitled to bonus awards in the event they are able to achieve the applicable milestones.

29.    Second, the Debtor believes the cost of establishing the EIP is reasonable in the context of this chapter 11 case, particularly in light of the immense work necessary to achieve

the milestones, the particular skillset of the individual EIP Participants, and the condensed timeline within which the Debtor intends to complete the wind down of its operations. Moreover, the cost of the EIP is fully supported by the Debtor's DIP lenders and the Debtor intends to present its revised DIP budget to the Court, which will allocate the incentive payments under the EIP.

30.    Third, the EIP is "fair and reasonable" in its scope and does not "discriminate unfairly" because the Debtor designed the program to include substantially all of the Debtor's non-insider employees whose services, in the Debtor's opinion, are truly necessary to achieving the wind down benchmarks.

31.    Fourth, the Debtor, with the assistance of its advisors, engaged in due diligence in formulating the EIP under the facts, circumstances and constraints of this chapter 11 case. Although the Debtor and its advisors are not aware of directly comparable companies (i.e., terminal operators) that have implemented an incentive program in the context of a wind down, the Debtor believes the scope and structure of the EIP (i.e., conditioning payment of the bonuses on the achievement of concrete benchmarks) is generally consistent with incentive plans implemented by companies comparable to the Debtor.

32.    Based upon the foregoing, the Debtor submits that it has established a "sound business purpose" for the formulation and implementation of the EIP, and has therefore satisfied the requirements of sections 363(b) and 503(c)(3) of the Bankruptcy Code.  The EIP is a "true" incentive program designed to motivate the EIP Participants to achieve specific goals under challenging circumstances and strenuous conditions that did not exist pre-bankruptcy. Accordingly, the Court should grant the requested relief.

### iii.  Even if the KEIP Implicates Section 503(c)(1), None of the KEIP Participants Is an Insider.

33.     As set forth above, the EIP is an incentive-based program, and section 503(c)(1) is therefore not implicated by this Motion.  Even if this Court were to determine, however, that the EIP is a disguised retention plan, section 503(c)(1) would remain inapplicable to all of the EIP Participants because such employees are not "insiders."

34.     Section 101(31)(B) of the Bankruptcy Code defines an "insider" to include individuals or parties that are, in relevant part, "(i) directors of the debtor; (ii) officers of the debtor; [or] (iii) persons in control of the debtor . . . ."  11 U.S.C. § 101(31)(B).  Individuals holding a title that suggests that such individuals are "officers," "directors," or "in control of the debtor" are presumptively insiders.  In re Foothills Tex., Inc., 408 B.R. 573, 585 (Bankr. D. Del. 2009); In re Borders Grp., Inc., 453 B.R. at 469-70; NMI Sys. Inc. v. Pillard (In re NMI Sys., Inc.), 179 B.R. 357, 370 (Bankr. D.D.C. 1995).  This Court has determined, however, that a debtor can overcome such presumption by submitting "evidence sufficient to establish that the officer does not, in fact, participate in the management of the debtor," and courts will use a "flexible approach" and take into account the "facts and circumstances surrounding the debtor's business" with regard to rebutting this presumption.  Foothills, 408 B.R. at 583-85.

35.     In utilizing this approach, at least one court in this district has found that the key inquiries in determining whether an individual with an "officer" title is actually an "insider" include whether the individual is actually participating in the *management of the debtor*, reports directly to the ultimate decision maker, or is in charge of, and has broad responsibility over, significant aspects of the debtor's business.  Id.

36.     In Foothills, the bankruptcy court considered these factors and held that two vice presidents in an oil exploration and production company with few employees were "insiders"

and "clearly participating in the management of the [d]ebtors" because they both reported directly to the ultimate decision maker and had wide ranging and broad responsibilities over significant aspects of the company: oil and gas leases, on the one hand, and oil and gas production and evaluation of reserves, on the other hand.  408 B.R. at 584.

37.    Here, the EIP Participants are entirely distinguishable from the officers in Foothills because none (i) report directly to the ultimate decision makers, (ii) have responsibilities beyond their narrowly focused area of expertise, or (iii) have any ability, on their own and without reporting to a more senior employee, to manage the overall business enterprise of the Debtor.

38.    With regard to persons "in control" of the Debtor, the Third Circuit has held that "actual control (or its close equivalent) is necessary for a person or entity to constitute an insider under section 101(31)'s 'person in control' language."  Shubert v. Lucent Techs. Inc. (In re Winstar Commc'ns, Inc.), 554 F.3d 382, 396 (3d Cir. 2009).

39.    Here, the EIP Participants are not insiders, notwithstanding some of their titles that may provide such an impression.  Certain EIP Participants have titles that include such words as "vice president," "manager," or "director".  While such titles may imply that the Employee is an "officer" or "person in control" of the Debtor, as described above, such EIP Participants are not, in fact, "officers," nor are they in charge of, or have broad responsibilities over, significant aspects of the Debtor's businesses, or report directly to the ultimate decision makers.  Indeed, the EIP Participants are responsible for very narrow and specific aspects of the Debtor's business, have little or no ability to manage broad aspects of the Debtor's business or strategy, and report to a higher level employee.

-15-

40.     Therefore, even if this Court were to determine that the EIP is a disguised retention plan, section 503(c)(1) would remain inapplicable to all of the EIP Participants because none of such employees are "insiders," as such term is used in the Bankruptcy Code

### The EIP is an Administrative Expense

41.     The Debtor requests that its obligations to pay the EIP, once earned, be deemed to be administrative expenses pursuant to section 503(b) of the Bankruptcy Code, entitled to priority under section 507(a)(2) of the Bankruptcy Code.

### Notice

42.     Notice of this Motion shall be provided to: (a) the Office of the United States Trustee for the District of Delaware; (b) the Debtor's twenty (20) largest unsecured creditors, as filed with the Debtor's chapter 11 petition; (c) any banking or financial institution that holds the Debtor's accounts; (d) counsel to HHH Oakland, Inc. and Terminal Investment Ltd., S.A. and (e) all parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002.  The Debtor submits that no other or further notice is necessary.

### No Prior Request

43.     No prior request for the relief sought herein has been made to this Court or any other court.

WHEREFORE, the Debtor respectfully request that the Court enter an order, substantially in the form attached hereto as Exhibit A, granting (i) the relief requested herein and (ii) such other and further relief to the Debtor as the Court may deem proper.

Dated:  February 24, 2016
Wilmington, Delaware

Respectfully submitted,

**RICHARDS, LAYTON & FINGER, P.A.**

/s/ Marisa A. Terranova Fissel
Mark D. Collins (No. 2981)
Marisa A. Terranova Fissel (No. 5396)
Andrew M. Dean (No. 6147)
One Rodney Square
920 North King Street
Wilmington, DE 19801
Telephone:    (302) 651-7700
Facsimile:    (302) 651-7701
Email:        collins@rlf.com
              terranova@rlf.com
              dean@rlf.com

-and-

**MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP**
Gregory A. Bray (admitted *pro hac vice*)
Thomas R. Kreller (admitted *pro hac vice*)
Haig M. Maghakian (admitted *pro hac vice*)
601 S. Figueroa Street, 30th Floor
Los Angeles, CA 90017
Telephone:    (213) 892-4000
Facsimile:    (213) 629-5063
Email:        gbray@milbank.com
              tkreller@milbank.com
              hmaghakian@milbank.com

-and-

Dennis F. Dunne
Samuel A. Khalil
28 Liberty Street
New York, NY 10005
Telephone:    (212) 530-5000
Facsimile:    (212) 530-5219
Email:        ddunne@milbank.com
              skhalil@milbank.com

*Proposed Counsel to Debtor and Debtor in Possession*