**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

_____

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| OUTER HARBOR TERMINAL, LLC,[1] | ) | Case No. 16-10283 (LSS) |
|  | ) |  |
|  | ) |  |
| Debtor. | ) |  |
|  | ) | **Proposed Hearing Date: March 16, 2016 @ 10:00 a.m. (ET)** |
|  | ) |  |
|  | ) | **Proposed Obj. Deadline: March 14, 2016 @ 4:00 p.m. (ET)** |
|  | ) |  |

_____

**DEBTOR'S MOTION FOR AN ORDER (I) AUTHORIZING (A) SALE AT PUBLIC
AUCTIONS OF CERTAIN EQUIPMENT AND MISCELLANEOUS PROPERTY FREE
AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS, AND
(B) ENTRY INTO AUCTION CONTRACT WITH RITCHIE BROTHERS
AUCTIONEERS (AMERICA) INC., (II) APPROVING PROCEDURES FOR THE
ASSUMPTION AND ASSIGNMENT OF UNEXPIRED LEASES OF PERSONAL
PROPERTY AND EXECUTORY CONTRACTS, AND
(III) GRANTING CERTAIN RELATED RELIEF**

Outer Harbor Terminal, LLC, the debtor and debtor-in-possession (the "Debtor")

in the above-captioned chapter 11 case, hereby files this motion (the "Motion") seeking entry of

an order (the "Order"), substantially in the form attached hereto as Exhibit A: (i) authorizing, but

not directing, the Debtor to (a) sell certain equipment and miscellaneous property at public

auctions free and clear of all liens, claims, encumbrances and interests, and (b) enter into an

auction contract with Ritchie Bros. Auctioneers (America) Inc. ("Ritchie Bros." or the

"Auctioneer") for the auction and sale of the equipment and miscellaneous property;

(ii) approving procedures for the Debtor's assumption and assignment of unexpired leases of

---

[1] The last four digits of the Debtor's federal tax identification number are 2070. The Debtor's principal place of business is located at 1599 Maritime Street, Oakland, CA 94607.

personal property and executory contracts; and (iii) granting certain related relief.  In support of this Motion, the Debtor respectfully states as follows:

## Jurisdiction

1.      This court (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).   The Debtor consents to the entry of a final order by the Court in connection with this Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory and legal predicates for the relief sought herein are sections 105(a), 363 and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"), Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 6004-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules").

## Background

4.      On February 1, 2016 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtor continues to operate its business as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No party has requested the appointment of a trustee or examiner and no committee has been appointed or designated in this chapter 11 case.

5.      Formed in 2009, the Debtor is a privately-owned, limited liability company headquartered in Oakland, California that provides container terminal operations and

stevedore services at the Port of Oakland (the "Port"), the fourth largest port on the west coast of the United States.  The Debtor's principal operations consist of: (i) the offloading and onloading of containers from cargo ships that berth at the Port; (ii) loading the offloaded containers on to trucks so that they may be delivered from the Port to their ultimate domestic destination; and (iii) providing various logistical services to the Debtor's customers in connection with the foregoing.  The Debtor operates from leased berths and terminal space that are owned by the Port.

6.     Prior to the Petition Date, following years of the Debtor operating at a loss and sustaining material, negative cash flows, the Debtor's members voted to terminate and wind down the Debtor's business operations.  The Debtor commenced the wind down on or about January 19, 2016 and intends to continue that process through the chapter 11 case.

7.     Additional information regarding the Debtor's business, assets, capital structure, and the circumstances leading to the filing of this chapter 11 case is set forth in the *Declaration of Heather Stack, Chief Financial Officer, in Support of Chapter 11 Petition and First Day Pleadings of Outer Harbor Terminal, LLC, Debtor and Debtor in Possession* [Docket No. 13] (the "First Day Declaration").

### Auction and Sale of the Equipment and Certain Other Assets

8.     The Debtor's principal owned assets consist of (i) larger equipment, machinery and vehicles used in the Debtor's day-to-day terminal operations, such as forklifts, trucks, and trailers (collectively, the "Major Equipment") and (ii) various miscellaneous or smaller assets that the Debtor uses from time to time, such as shop tools, spare parts, empty cargo containers and IT equipment (collectively the "Miscellaneous Property"; together with the

3

Major Equipment, the "Equipment").[2]   In connection with the ongoing wind down of its operations, the Debtor intends to sell or otherwise dispose of the Equipment once such assets are no longer necessary to the Debtor's operations.  By monetizing the Equipment, the Debtor can enhance recoveries to the Debtor's creditors and fund administrative expenses associated with the chapter 11 case.

9.      Given the nature of the Equipment, the Debtor believes that there is likely a relatively limited universe of potential purchasers of such assets.  In addition, pursuant to the settlement agreement between the Debtor and the Port, the Debtor intends to surrender the terminal space to the Port on or before April 29, 2016[3] and thus needs to consummate the wind down of operations and dispose of the Equipment as expeditiously as possible.  In light of these circumstances, the Debtor does not have sufficient time to individually market or sell the various pieces of Equipment.   Moreover, it would be very cost prohibitive if the Debtor were to seek separate court approval for individual dispositions of Equipment.

10.      In light of these circumstances, the Debtor has determined that the most cost-effective means of selling the Equipment and generating value for the Debtor's estate would be through public auctions of the Equipment conducted by an auctioneer that specializes in the sale of industrial equipment.  To that end, the Debtor solicited bids from multiple auctioneers and received proposals from three different companies.  Ultimately, the Debtor selected Ritchie Bros., a nationally recognized leader in conducting auctions of industrial equipment to serve as auctioneer for the Equipment.

---

[2] The specific Major Equipment and categories of Miscellaneous Property are identified on Schedules 1 and 2 of the Auction Contract (as defined below) with Ritchie Bros., which is attached hereto as Exhibit B.

[3] The Debtor has separately filed a motion seeking approval of the settlement agreement with the Port and the consensual rejection of the Debtor's agreements with the Port [Docket No. 104].

11.     Pursuant to the terms of the contract for auction entered into by the Debtor and Ritchie Bros., a copy of which is attached hereto as <u>Exhibit B</u> (the "<u>Auction Contract</u>")[4], Ritchie Bros. would market, auction and sell the Equipment through two separate public auctions.  The first public auction would be held on April 14, 2016 for the Major Equipment. The second public auction would be held on June 15, 2016 for the Miscellaneous Property and any unsold Major Equipment remaining from the first auction.[5]  Each of these auctions has been pre-scheduled by Ritchie Bros. months in advance and would include the sale of equipment and machinery owned by various entities (not just the Debtor).  Thus, the Debtor and Ritchie Bros. believe there will already be a significant amount of attention to these auctions from potential buyers.[6]  Furthermore, the Auction Contract contemplates that the Debtor can continue to use the Major Equipment through and including April 29, 2016, thus allowing the Debtor to use the Major Equipment through the anticipated date that it would cease terminal operations and surrender the premises to the Port.[7]

12.     As compensation for its services, Ritchie Bros. would receive a commission equal to 9.75% of the gross proceeds from the sale of the Equipment, with a minimum commission of $100.00 per lot.  The net auction proceeds (after deduction of certain agreed-to costs of sale) will be payable into a segregated account maintained by the Debtor by no later than fourteen (14) days of the conclusion of the auction (the "<u>Sale Funds</u>").  The Sale Funds

---

[4] The following is intended as a general summary of the contemplated auction process and qualified in its entirety by reference to the Auction Contract.

[5] Ritchie Bros. intends to commence the marketing of the Major Equipment immediately following the Court's entry of an order granting the relief requested in this Motion.

[6] As is customary for public auctions that Ritchie Bros. conducts for this type of equipment, there will be no reserve price for the Equipment being sold.

[7] Pursuant to the settlement agreement with the Port, the Debtor expects to lease from the Port on a short-term basis a 5-acre lot that the Debtor will use as a storage facility, including for storage of the Major Equipment pending the pickup of such equipment by the purchaser at auction.

will then be released to the Debtor upon the earlier of (a) the applicable purchaser's removal of the Equipment from Owner's premises and (b) May 31, 2016.[8]

**Proposed Procedures for the Assumption and Assignment
of Unexpired Leases and Executory Contracts**

13.    In addition to the Equipment that it owns, the Debtor uses certain large-scale equipment (the "Leased Equipment") that it leases from various entities (the "Equipment Leases").  In addition, the Debtor may be party to certain executory contracts related to the use or servicing of its various equipment or for the provision of other services or goods in connection with the Debtor's day-to-day business operations (collectively, the "Executory Contracts"; together with the Equipment Leases, the "Leases and Contracts").

14.    In connection with its wind-down, the Debtor is exploring the potential assumption and assignment to third parties of the Leases and Contracts, as the equipment and services provided by such agreements will no longer be necessary to the Debtor's business operations.  The Debtor believes that the assumption and assignment of the Leases and Contracts could present significant benefits to the Debtor's estate, either in the form of (i) monetary consideration paid to the Debtor by the third-party assignee and/or (ii) the reduction or elimination of potential damage claims that may be asserted by the lessors or contract counterparties if the Debtor instead sought to reject the Leases or Contracts.[9]

15.    Similar to the sale of the Equipment, the Debtor believes that seeking the Court's approval for each individual assignment of a Lease or Contract would be unduly cost

---

[8] In the event any damage occurs to the Major Equipment subsequent to the auction but prior to the purchaser's pickup and removal of the equipment, the Debtor will be required to refund the purchaser for such damages from the Sale Funds prior to their release to the Debtor.

[9] The Debtor has separately obtained the Court's approval of specialized procedures allowing for the rejection of any Leases or Contracts in the event the Debtor is unable to assume and assign those leases to third parties.  See *Order Establishing Procedures for the Rejection of Executory Contracts and Unexpired Leases of Personal Property* [Docket No. 113].

prohibitive in the context of this chapter 11 case.  Accordingly, the Debtor proposes to use the streamlined procedures set forth below to govern any proposed assumption and assignment of the Leases and Contracts.

16.    In addition, the Debtor anticipates that parties interested in acquiring the Equipment Leases may include:  (i) certain of the Debtor's competitors, whether located at the Port or elsewhere and (ii) entities related to the Debtor, including affiliates of the Debtor's members, who are interested in preserving relationships with certain equipment lessors with whom such related entities contract in their separate businesses.  Nevertheless, in all cases, the proposed assignment of each Equipment Lease will be supported by a third party appraisal of such lease obtained by the Debtor, in order to ensure that the proposed consideration for such lease reflects its fair market value and each sale or transfer is in the best interests of the Debtor's estate.[10]

17.    The Debtor also notes that, in some cases, the particular Lease or Contract to be assumed and assigned may have little to no market value, and thus the proposed assignee may offer de minimis or no cash consideration for the assignment of such Lease or Contract. Nonetheless, the Debtor submits that assignment of such "no-value" Leases or Contracts still benefits the Debtor's estate because the assignee would become responsible for any remaining obligations that would come due under such Lease or Contract.  In contrast, absent assignment, the Debtor would be forced to reject the Lease or Contract, thus resulting in potentially large rejection claims against the estate that would dilute recoveries to other creditors.

---

[10] Prior to the commencement of this chapter 11 case, the Debtor engaged a third-party appraiser, Pacific Machine & Equipment Appraisal, LLC, to conduct appraisals of the Equipment Leases, which appraisal process was completed in late January, 2016.

18.     The Debtor proposes the following procedures for approval of the assumption and assignment of the Leases and Contracts (the "Assignment Procedures"):

    a.    Authority to Assume and Assign the Leases.

        (i)    The Debtor is authorized to assume and assign any Leases or Contracts if the Debtor determines in the reasonable exercise of its business judgment that such assignment is in the best interest of the estate, subject to the procedures set forth herein.

        (ii)    Any assignee of a Lease or Contract shall assume all obligations of such Lease or Contract. The failure of a contract counterparty to object to such proposed assumption and assignment according to the objection procedures described below shall be deemed consent to the proposed assumption and assignment to the assignee.

    b.    Notice Parties:

        (i)    Debtor Notice Parties. For purposes of the Assignment Procedures, the "Debtor Notice Parties" are: (i) the Debtor, c/o Outer Harbor Terminal, LLC, 1599 Maritime Street, Oakland, CA 94607 (Attn: Heather Stack, Chief Financial Officer); and (ii) counsel to the Debtor, (a) Milbank, Tweed, Hadley & McCloy LLP, 601 S. Figueroa Street, 30th Floor, Los Angeles, CA 90017 (Attn: Gregory A. Bray, Esq., Thomas R. Kreller, Esq., and Haig M. Maghakian, Esq.), (b) Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, DE 19801 (Attn: Mark D. Collins, Esq.).

        (ii)    Assignment Notice Parties. For purposes of the Assignment Procedures, the "Transaction Notice Parties" are: (i) the United States Trustee for the District of Delaware (the "U.S. Trustee"), (ii) counsel for any official committee appointed in this chapter 11 case, (iii) counsel for the agent for the Debtor's postpetition lenders, (iv) all affected Lease or Contract counterparties with respect to the proposed assignment, and (v) all parties who have requested notice under Bankruptcy Rule 2002.

    c.    Assignment Notice:

        (i)    The Debtor shall, at least seven (7) days prior to assuming and assigning any Lease or Contract, file and serve a

written notice, substantially in the form attached hereto as <u>Exhibit C</u>, of such proposed assignment by e-mail, facsimile, or overnight delivery service (each notice, an "<u>Assignment Notice</u>") to each of the Assignment Notice Parties.

(ii)     Each Assignment Notice shall specify, among other things, (i) the Lease or Contract to be assumed and assigned, (ii) the proposed third party to whom the Lease or contract will be assigned (and any relationship such party has with the Debtor), (iii) the proposed effective date of such assumption and assignment (the "<u>Assignment Effective Date</u>"), (iv) the proposed monetary consideration to be paid by the third-party assignee, (v) the proposed amount to cure any defaults under such Lease or Contract, (vi) a certification that any proposed assignee has demonstrated to the Debtor the financial wherewithal and willingness to perform under such Lease or Contract, and (vii) the date and time within which objections to such proposed assumption and assignment may be filed and served on the Debtor.

d.     <u>Objection Procedures</u>:

(i)     Should an Assignment Notice Party object to the proposed assumption and assignment of a Lease or Contract, including with respect to any proposed cure amount, such party must file and serve a written objection, so that such objection is filed with this Court and actually received by the Debtor Notice Parties and other Assignment Notice Parties no later than seven (7) days after the date that the Debtor serves the Assignment Notice.

(ii)     If a timely objection is filed that cannot be resolved, the Debtor would not proceed with the proposed assumption and assignment of the Lease or Contract but would instead, in its discretion, either (i) not seek to consummate the proposed assumption and assignment or (ii) seek Court approval of the proposed assumption and assignment upon an expedited notice and hearing, subject to the Court's availability.

e.     <u>Event of No Objection</u>:

If no written objections are filed by any of the Assignment Notice Parties within seven (7) days of service of such Assignment Notice in accordance with these procedures, then (i) the Debtor is

9

authorized to consummate such assumption and assignment to the proposed assignee; (ii) the Debtor's proposed cure amount will be binding upon each non-Debtor party to such Lease or Contract for all purposes in this chapter 11 case and no additional cure amounts shall be due; (iii) each non-Debtor party to such executory contract or unexpired lease will be deemed to have received adequate assurance of future performance; (iv) the effective date of such assumption and assignment will be the Assignment Effective Date; and (v) the Debtor shall submit a proposed order to the Court granting the unopposed requested relief, together with a statement that there were no timely objections to the proposed relief.

19.     The Debtor submits that the above-described Assignment Procedures provide sufficient notice of proposed assumptions and assignments of the Leases and Contract to relevant counterparties and the other Assignment Notice Parties.  Nevertheless, nothing in the Assignment Procedures would prevent the Debtor, in its discretion, from seeking the separate approval of this Court at any time of any proposed assumption and assignment of any Lease or Contract upon notice and a hearing, independent of the Assignment Procedures.

## Relief Requested

20.     The Debtor seeks entry of an order, substantially in the form attached hereto as Exhibit A: (i) authorizing, the Debtor to (a) sell the Equipment at public auctions free and clear of all liens, claims, encumbrances and interests, and (b) enter into the Auction Contract with Ritchie Bros. for the auction and sale of the Equipment; (ii) approving the Assignment Procedures; and (iii) granting certain related relief.

## Basis for Relief

**I.  The Court Should Approve the Debtor's Sale or Transfer of the Equipment as Proposed**

### A.    Sale or Transfer of the Equipment through Public Auctions Is in the Best Interests of the Debtor and its Estate

21.     Section 105(a) of the Bankruptcy Code provides, in pertinent part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

22.     Section 363(b)(1) provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  The use, sale, or lease of property of the estate, other than in the ordinary course of business, is authorized if the Court finds a "sound business purpose" for such action.  See Daichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.), 242 B.R. 147, 153 (Bankr. D. Del. 1999) (citing In re Delaware & Hudson Ry. Co., 124 B.R. 169, 176 (D. Del. 1991)).  In Delaware, the business judgment rule creates a "presumption that directors act in good faith, on an informed basis, honestly believing that their action is in the best interests of the company." Stanizale v. Nachtomi (In re Tower Air, Inc.), 416 F.3d 229, 234 (3d Cir. 2005) (citations omitted); see also Official Comm. of Sub. Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.), 147 B.R. 650, 656 (S.D.N.Y. 1990) (holding that Delaware's business judgment rule principles have "vitality by analogy" in chapter 11).

23.     In addition, bankruptcy Rule 6004(f)(1) provides that a sale not in the ordinary course of business may be conducted by public or private sale.  Fed. R. Bankr. P. 6004(f)(1).  Further, Courts have found that a debtor has broad discretion in determining the manner in which its assets are sold.  Berg v. Scanlon (In re Alisa P'ship), 15 B.R. 802, 802 (Bankr. D. Del. 1981) ("[T]he manner of [a] sale is within the discretion of the trustee . . . ."); In re Bakalis, 220 B.R. 525, 531 (Bankr. E.D.N.Y. 1998) (noting that trustee has "ample discretion to administer the estate, including authority to conduct public or private sales of estate property")

(citations omitted).  Thus, as long as a debtor maximizes the return to its estate, a court should defer to a debtor's business judgment regarding how to structure an asset sale.  In re Dura Auto. Sys., Inc., No. 06-11202 (KJC), 2007 Bankr. LEXIS 2764, at *253 (Bankr. D. Del. Aug. 15, 2007) ("The paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate.") (internal citations omitted); In re NEPSCO, Inc., 36 B.R. 25, 26 (Bankr. D. Me. 1983) ("Clearly, the thrust of th[e] statutory scheme [governing 363 sales] is to provide maximum flexibility to the trustee, subject to the oversight of those for whose benefit he acts, i.e., the creditors of the estate.").

24.    Because the Debtor needs to quickly divest its estate of the Equipment in order to facilitate the efficient and orderly wind-down of its operations, it is not cost-effective or practical for the Debtor to individually market and sell various pieces of equipment.  If the Debtor was required to seek separate Court approval for the disposition of each piece of Equipment—which would include drafting, serving and filing necessary pleadings, as well as court appearances—it would greatly increase the administrative burden on and cost to the Debtor's estate.  Furthermore, the potential purchasers of the Equipment are unlikely to be familiar with the bankruptcy process and thus may be deterred from purchasing the assets if they needed to obtain separate court approval.

25.    Instead, the Debtor believes that a streamlined public auction process that is approved by the Court and conducted by a nationally recognized auctioneer specializing in sales of industrial equipment is the best way to monetize the Equipment efficiently and expeditiously.  Indeed, the public auctions will target those entities that are most likely to be interested in the Equipment, thus improving the Debtor's chances of maximizing the Equipment's value.  Furthermore, by having the auction and sales approved in advance, the

Debtor will not need to seek separate approvals from the Court, thereby reducing the estate's expenses.  Accordingly, the Debtor submits that the proposed sale of the Equipment through the public auctions is in the best interests of the estate and reflects a sound exercise of the Debtor's business judgment.

**B.  <u>Sale of the Equipment Should Be Free and Clear</u>**

        26.    The Debtor is not aware of any liens on any of the Equipment other than any liens and security interests granted pursuant to the Court's orders approving the Debtor's postpetition financing.  In any event, the Debtor requests authorization to sell or transfer the Equipment free and clear of any and all liens, claims, encumbrances, and other interests in accordance with section 363(f) of the Bankruptcy Code, with any such liens, claims, encumbrances, and other interests attaching to the proceeds of the sale of the Equipment and, subject to any claims and defenses that the Debtor and its estates may possess with respect thereto, to distribute the proceeds of any such sale to the secured party (if any).

        27.    Under section 363(f) of the Bankruptcy Code, a debtor may sell estate property free and clear of liens, claims, encumbrances, and other interests if one of the following conditions is satisfied:

    a.   applicable nonbankruptcy law permits sale of such property free and clear of such interest;

    b.   such entity consents;

    c.   such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

    d.   such interest is in bona fide dispute; or

    e.   such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).  Because section 363(f) of the Bankruptcy Code is written in the disjunctive, the Debtor only needs to satisfy one of its five requirements to permit the sale of the Equipment "free and clear" of liens, claims, encumbrances, and other interests.  See, e.g., Folger Adam Sec. Inc. v. De Matteis/McGregor, JV, 209 F.3d 252, 257 (3d Cir. 2000) (noting that a debtor is authorized to sell property free and clear of "any interest" if any one of the five prescribed conditions under section 363(f) is met); In re Dura Automotive Sys., Inc., No. 06-11202 (KJC), 2007 WL 7728109, at *93 (Bankr. D. Del. Aug. 15, 2007).

28.    The Debtor submits that sale or transfer of the Equipment pursuant to the proposed auctions will satisfy one or more requirements of section 363(f).  As an initial matter, the Debtor believes the only liens on and security interests in the assets are those granted to the Debtor's DIP lenders in connection with the Debtor's postpetition financing.  Indeed, the Debtor is unaware of any other parties asserting a lien or security interest on the Equipment.  The Debtor also understands that the Lenders have consented to the sale of the Equipment free and clear of their liens, provided that such liens will attach to the proceeds of the sale of the Equipment. Furthermore, if any other party asserts a lien or interest in the assets, those liens and interests will also attach to the sale proceeds (subject to the estate's defenses, if any, to those liens and interests).

29.    In addition, the Debtor submits that all relevant parties will have sufficient notice and the ability to object to this Motion and the proposed free and clear sale of the Equipment.  Accordingly, if a party with a lien does not timely object to the Motion and the relief requested herein, the Debtor requests that such party be deemed to consent to the sale of the Equipment within the meaning of section 363(f)(2) of the Bankruptcy Code.  See Hargrave v.

Twp. of Pemberton (In re Tabone, Inc.), 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (finding failure to object to sale free and clear of liens, claims and encumbrances satisfies section 363(f)(2)).

30.    To the extent any relevant party does object to the proposed free and clear sale of the Equipment, and the Debtor and such party cannot reach a resolution of such dispute, the Debtor submits that the Court can consider such issue at the hearing.

### C. Sales or Transfers of the Equipment Should Be Subject to the Protections of Section 363(m)

31.    Section 363(m) of the Bankruptcy Code provides, in part, that the reversal or modification on appeal of an authorization of a sale pursuant to section 363(b) or section 363(c) of the Bankruptcy Code does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.  11 U.S.C. § 363(m).  In approving the sale free and clear of liens, claims, encumbrances, and other interests, the Debtor also requests that the Court find and hold that all purchasers and transferees of the Equipment via the public auctions are entitled to the protections afforded by section 363(m) of the Bankruptcy Code.  The Debtor submits that such relief is appropriate in light of the open and public nature of the proposed auction process, which will ensure that the purchasers are acting in good faith with access to equal information.  See Esposito v. Title Ins. Co. of Pa. (In re Fernwood Mkt.), 73 B.R. 616, 620 (Bankr. E.D. Pa. 1987) (good faith purchasers are protected under section 363(m) where notice is provided to lienholders).

## II. The Debtor's Entry into the Auctioneer Contract Agreement Should Be Approved

32.    The Debtor believes that ample business justification exists for entry into the Auction Contract with Ritchie Bros.  See In re Lionel Corp., 722 F.2d at 1071-72.  As a key

component of the Debtor's efforts to preserve and maximize estate value, reduce expenses, and efficiently administer the wind-down process, the Debtor has concluded, in its business judgment, that entry into the Auction Contract is beneficial to the Debtor's estate.    After conducting reasonable diligence regarding potential brokers or auctioneers to assist the Debtor in its asset sale efforts, the Debtor determined that entering into the Auction Contract would provide the best return to the Debtor's estate in connection with the Equipment.    Additionally, the Debtor believes that the terms set forth in the Auction Contract are fair and equitable, were negotiated at arms' length and in good faith, and present the best path forward with respect to the sale or transfer of the Equipment.

33.    In particular, Ritchie Bros. has demonstrated expertise in conducting auctions of industrial equipment and related assets and can implement the marketing and sale of the Equipment in an efficient and cost-effective manner.    Thus, entry into the Auction Contract, will enable the Debtor to utilize the experience, skills, and resources of Ritchie Bros., which in turn will present significant cost savings that will inure to the benefit of the Debtor's estate and all stakeholders.

34.    In addition, Ritchie Bros.'s fees are based on the successful sale of the Equipment, represented by a percentage of gross proceeds, thus incentivizing Ritchie Bros. to obtain the highest price at auction.    The Debtor believes that such fee percentage is market-based, derived from a competitive marketing process, and consistent with the fee structures that courts have approved in connection with entry into similar agreements.    See, e.g., In re Haggen Holding, No. 15-11874 (KG), Docket No. 446 (Bankr. D. Del. Oct. 15, 2015) (approving a base fee of 0.5% of aggregate gross proceeds of merchandise sold where cost recovery exceeded a certain threshold, which could be increased to 0.75% or 0.9% based on increased cost recovery,

and where no fee would be earned if the cost recovery threshold was not met); In re RadioShack Corp., No-15-10197 (KJC), Docket Nos. 18, 106 (Bankr. D. Del. 2015) (approving a fee of 1.5% of gross sales, an incentive fee of 0.5% of the aggregate proceeds from the sales, and a fee of 17.5% of the gross receipts from sales of furniture, fixtures, and equipment); In re The Great Atl. & Pac. Tea Co., Inc., No. 15-23007 (RDD), Docket Nos. 178, 546 (Bankr. S.D.N.Y. 2015) (approving an inventory fee of 1% and a fee of 10% of proceeds from sales of furniture, fixtures, and equipment).

35.    Accordingly, the Debtor submits that the decision to employ the Auction Contract is a sound exercise of its business judgment, and requests that the Court authorize entry into the Auction Contract.

## III. The Court Should Approve the Assignment Procedures

### A. Assumption and Assignment of Executory Contracts and Unexpired Leases Is In the Best Interests of the Debtor's Estate and Creditors

36.    Section 365(a) of the Bankruptcy Code provides, in relevant part, that a debtor "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). Section 365(b)(1) of the Bankruptcy Code, in turn, codifies the requirements for assuming an executory contract or unexpired lease of a debtor, providing, in relevant part, that a debtor may not assume such contract or lease unless the debtor:

> (A) cures, or provides adequate assurance that the [debtor] will promptly cure, [a] default…;
>
> (B) compensates, provides adequate assurance that the [debtor] will promptly compensate, a party other than the debtor to such contract or lease, for any pecuniary loss to such party resulting from such default; and
>
> (C) provides adequate assurance of future performance under such contract or lease.

11 U.S.C.§ 365(b)(1).

37.    Similar to a debtor's proposed use, sale or lease of property outside of the ordinary course of business, courts apply the business judgment standard in determining whether the assumption or rejection of an executory contract or unexpired lease pursuant to section 365(a) of the Bankruptcy Code should be approved.    See, e.g., Group of Inst. Investors v. Chicago, Milwaukee, St. Paul & Pac. R.R. Co., 318 U.S. 523, 550 (1943) (noting "the question whether . . . [and on what terms a lease] should be assumed is one of business judgment"); In re Nickels Midway Pier, LLC, 341 B.R. 486, 493 (D.N.J. 2006) (noting that the Third Circuit has adopted the "business judgment standard" to assess "the decision of a trustee or debtor in possession to assume or reject" a contract); In re Ionosphere Clubs, Inc., 100 B.R. 670, 673 (Bankr. S.D.N.Y. 1989) ("the business judgment rule is the standard to be applied under either scenario" of seeking to assume a prepetition contract or unexpired lease or sell assets other than in the ordinary course of business).  Generally, courts will approve a proposed assumption or rejection under the business judgment standard if it would be beneficial to the estate. See, e.g., In re Tayfur, 505 B.R. 673, 677 (Bankr. W.D. Pa. 2014) ("the decision of the debtor [to assume or reject] must also be in the best interest of the estate"); In re AbitibiBowater Inc., 418 B.R. 815, 831 (Bankr. D. Del. 2009) (noting that business judgment standard only requires showing that decision to assume or reject "will benefit the estate"); Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.), 4 F.3d 1095, 1099 (2d Cir. 1993) (holding that "the process of deciding a motion to assume is one of the bankruptcy court placing itself in the position of the trustee or debtor-in-possession and determining whether assuming the contract would be a good business decision or a bad one").  Under the "business judgment" standard, the debtor's decision to assume or reject an executory contract or unexpired lease should be

approved unless the decision is the product of bad faith, whim, or caprice.  In re Caribbean Petroleum Corp., 444 B.R. 263, 268 (Bankr. D. Del. 2010) (citing In re TWA, 261 B.R. at 121).

38.    Here, the assumption and assignment of the Leases and Contracts will present substantial benefits to the Debtor's estate in the form of monetary consideration that may be paid by the assignee to the Debtor and the mitigation of potential damage claims that the lease and contract counterparties might assert against the estate if the lease or contract was rejected. Furthermore, as discussed above, each proposed assumption and assignment of a Lease or Contract (including to any affiliate of or entities related to the Debtor) will be supported by third-party appraisals obtained by the Debtor.  Accordingly, the Debtor believes the assumption and assignment of the Leases and Contracts pursuant to the Assignment Procedures is a sound exercise of the Debtor's business judgment.

39.    Furthermore, pursuant to the Assignment Procedures, the Debtor will send to counterparties an Assignment Notice listing the amounts necessary to cure any defaults pursuant to section 365(b)(1)(A) of the Bankruptcy Code and the counterparties will have an opportunity to dispute the proposed cure amount.  The Debtor will also evaluate each assignee of an unexpired lease or executory contract to determine if such assignee has adequate financial capacity to perform its obligations under the lease pursuant to section 365(b)(1)(C) of the Bankruptcy Code and shall include a representation there is sufficient adequate assurance of future performance of each unexpired lease or executory contract on the Assignment Notice. The Debtor therefore believes that it will meet the requirements for assumption and assignment of any unexpired leases or executory contracts through compliance with the Assignment Procedures.

B.    **Assumption and Assignment of Executory Contracts and Leases Will Comply with Procedural Requirements of Bankruptcy Rule 6006**

40.    In addition, as a procedural matter, "[a] proceeding to assume, reject, or assign an executory contract or unexpired lease, other than as part of a plan, is governed by Rule 9014." FED. R. BANKR. P. 6006(a).  Bankruptcy Rule 9014 provides that: "In a contested matter not otherwise governed by these rules, relief shall be requested by motion, and reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought." FED. R. BANKR. P. 9014(a).    The notice and hearing requirements for contested matters under Bankruptcy Rule 9014 are satisfied if appropriate notice and an opportunity for hearing are given in light of the particular circumstances.  See 11 U.S.C. § 102(1)(A) (defining "after notice and a hearing" or a similar phrase to mean such notice and an opportunity for hearing "as [are] appropriate in the particular circumstances").  The Assignment Procedures provide notice to lease and contract counterparties and an opportunity to be heard at a hearing, and thus satisfy the requirement of Bankruptcy Rules 6006(a) and 9014.

41.    Furthermore, under Bankruptcy Rule 6006(e), a debtor may join requests for authority to assume and assign multiple executory contracts and unexpired leases in one motion, subject to Bankruptcy Rule 6006(f).  See FED. R. BANKR. P. 6006(e).  Bankruptcy Rule 6006(f) sets forth six requirements that motions to assume or reject multiple executory contracts and unexpired leases must satisfy.  These requirements are procedural in nature.  A motion to assume or reject multiple executory contracts and unexpired leases that are not between the same parties shall:

> (a)    state in a conspicuous place that parties receiving the omnibus motion should locate their names and their contracts or leases listed in the motion;
>
> (b) list parties alphabetically and identify the corresponding contract or lease;
>
> (c) specify the terms, including the curing of defaults, for each requested assumption or assignment;

20

(d) specify the terms, including the identity of each assignee and the adequate assurance of future performance by each assignee, for each requested assignment;

(e) be numbered consecutively with other omnibus motions to assume, assign, or reject executory contracts or unexpired leases; and

(f) be limited to no more than 100 executory contracts or unexpired leases.

FED. R. BANKR. P. 6006(f).

42.    The Assignment Procedures satisfy Bankruptcy Rule 6006(f).  The clear purpose of Bankruptcy Rule 6006(f) is to protect the due process rights of counterparties to the Debtor's unexpired leases and executory contracts.  Counterparties must be able to locate their leases and readily determine whether their leases are being assumed or rejected.  The Debtor will comply with all applicable procedural requirements of Bankruptcy Rule 6006(f) when serving the Assignment Notices.

## Relief from Rule 6004 Is Appropriate

43.    Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  FED. R. BANKR. P. 6004(h).  In light of the time-sensitive nature of the Debtor's ongoing wind down and the desire to auction the Major Equipment at the April 14, 2016 public auction that has already been pre-scheduled by Ritchie Bros., the Debtor requests that the Court waive the fourteen-day stay contemplated by Bankruptcy Rules 6004.  Waiver of the 14-day stay will allow Ritchie Bros. to commence marketing immediately and foster potential bidders' interest in the Equipment.  In addition, Ritchie Bros. can represent to the potential purchasers that the Court has provided the Debtor the requisite authority to sell the Equipment.  Absent those representations from Ritchie Bros., the potential purchasers may decrease their proposed bid amount or decide not to bid at all in light of continuing uncertainty regarding the Debtor's authority to sell the assets.

**Notice**

44.     Notice of this Motion shall be provided to: (a) the Office of the United States Trustee for the District of Delaware; (b) the Debtor's twenty (20) largest unsecured creditors, as filed with the Debtor's chapter 11 petition; (c) any banking or financial institution that holds the Debtor's accounts; (d) counsel to HHH Oakland, Inc. and Terminal Investment Ltd., S.A.; and (e) all parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002.  The Debtor submits that no other or further notice is necessary.

**No Prior Request**

45.     No prior request for the relief sought herein has been made to this Court or any other court.

WHEREFORE, the Debtor respectfully requests that the Court enter an order, substantially in the form attached hereto as Exhibit A, granting (i) the relief requested herein and (ii) such other and further relief to the Debtor as the Court may deem proper.

Dated:  March 2, 2016
Wilmington, Delaware

Respectfully submitted,

**RICHARDS, LAYTON & FINGER, P.A.**

/s/ Andrew M. Dean
Mark D. Collins (No. 2981)
Marisa A. Terranova Fissel (No. 5396)
Andrew M. Dean (No. 6147)
One Rodney Square
920 North King Street
Wilmington, DE 19801
Telephone:     (302) 651-7700
Facsimile:     (302) 651-7701
Email:          collins@rlf.com
                terranova@rlf.com
                dean@rlf.com

-and-

**MILBANK, TWEED, HADLEY & MᶜCLOY LLP**
Gregory A. Bray (admitted *pro hac vice*)
Thomas R. Kreller (admitted *pro hac vice*)
Haig M. Maghakian (admitted *pro hac vice*)
601 S. Figueroa Street, 30th Floor
Los Angeles, CA 90017
Telephone:    (213) 892-4000
Facsimile:    (213) 629-5063
Email:         gbray@milbank.com
                 tkreller@milbank.com
                 hmaghakian@milbank.com

                 -and-


Dennis F. Dunne
Samuel A. Khalil
28 Liberty Street
New York, NY 10005
Telephone:    (212) 530-5000
Facsimile:    (212) 530-5219
Email:         ddunne@milbank.com
                 skhalil@milbank.com

*Counsel to Debtor and Debtor in Possession*