## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------- x

In re:                                              :     Chapter 11

                                                    :

OUTER HARBOR TERMINAL, LLC,[1]                       :     Case No. 16-10283 (LSS)

                                                    :

                                                    :     **Hearing Date:  January 12, 2017 at 9:30 a.m. (ET)**

                              Debtor.               :     **Objection Deadline: January 5, 2017 at 4:00 p.m. (ET)**

---------------------------------------------------- x

## DEBTOR'S MOTION FOR ENTRY OF AN ORDER FURTHER EXTENDING THE EXCLUSIVE PERIODS DURING WHICH ONLY THE DEBTOR MAY FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF

Outer Harbor Terminal, LLC, the debtor and debtor-in-possession (the "Debtor") in the above-captioned chapter 11 case (the "Bankruptcy Case"), hereby files this motion (the "Motion") pursuant to Section 1121(d) of title 11 of the United States Code (the "Bankruptcy Code") for entry of an order, in substantially the form attached hereto as Exhibit A, extending the period during which the Debtor has the exclusive right to file a chapter 11 plan (the "Exclusive Filing Period") by ninety (90) days through and including March 27, 2017 and extending the period during which the Debtor has the exclusive right to solicit acceptances thereof (the "Exclusive Solicitation Period," and together with the Exclusive Filing Period, the "Exclusive Periods") through and including May 26, 2017, or approximately sixty (60) days after the expiration of the Exclusive Filing Period, as extended.  In support of this Motion, the Debtor respectfully represents as follows:

---

[1]  The last four digits of the Debtor's federal tax identification number are 2070. The Debtor's principal place of business is located at 1599 Maritime Street, Oakland, CA 94607.

## PRELIMINARY STATEMENT[2]

1.      The Debtor commenced the Bankruptcy Case primarily with the goal of implementing an orderly and efficient wind down of its business and liquidation of its assets, while maximizing value that would inure to its creditors in the process.  Since the Petition Date (defined below), the Debtor has: (i) terminated its business operations in an organized and controlled manner; (ii) negotiated a settlement and consensual rejection of its long-term lease with the Port of Oakland (the "Port"), which settlement virtually eliminated the Port's potentially large unsecured claim for rejection damages; (iii) concluded the sale of virtually all of the Debtors' assets and the assignments and rejections of the Debtors' various unexpired leases and executory contracts; (iv) collected on or settled substantially all of the Debtor's outstanding receivables, including a large receivable that resulted in a $1.3 million cash infusion to the estate; (v) filed various objections to claims asserted against the estate, the bulk of which have been or are expected to be resolved consensually; and (vi) negotiated a settlement of certain large claims—including with the City of Oakland and the IAM labor union—which  have resulted in substantial reductions in the overall claims asserted against the estate and thus improved anticipated recoveries for general unsecured creditors.  The Debtor also notes that it has been able to finance the wind down during this Bankruptcy Case using solely its cash on hand and revenues generated from customer receivables and asset sales.  Thus, the Debtor has not drawn on its DIP credit facility and currently does not anticipate drawing on the DIP facility in the future.

2.      Because the Debtor's wind down is substantially complete, the Debtor and its advisors are now primarily focused on completing the claims reconciliation process and

---

[2] Capitalized terms used in the Preliminary Statement but not otherwise defined therein, shall have the meanings ascribed to them subsequently in the Motion.

formulating and proposing a plan of liquidation for the benefit of its creditors.  The Debtor

believes it will be able to settle certain of its pending claim objections and that those anticipated

settlements will provide the Debtor with the ability to make a distribution to creditors.

Accordingly, the Debtor has begun drafting a plan of liquidation and disclosure statement that it

hopes to file with this Court in the near term.

3.      In light of the foregoing, the Debtor is thus seeking an extension of the Exclusive

Periods in order to allow the Debtor to finalize and document the anticipated claim settlements

and complete the drafting of its plan of liquidation and disclosure statement.  The extensions of

the Exclusive Periods requested herein, which the Debtor submits are reasonable under the

circumstances, will allow the Debtor to continue such plan-related efforts without the distraction

of dealing with any competing plans filed and, accordingly, are in the best interest of the

Debtor's estate and creditors.

## JURISDICTION

4.      This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334.

Venue is proper under 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding as defined in 28

U.S.C. § 157(b)(2).[3]

5.      The bases for the relief requested herein are sections 105 and 1121(d) of the

Bankruptcy Code.

## BACKGROUND

6.      On February 1, 2016 (the "Petition Date"), the Debtor filed a voluntary petition

for relief under chapter 11 of the Bankruptcy Code.  The Debtor continues to operate its business

---

[3]    Pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States
Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtor hereby expressly confirms its consent
to the entry of a final order by this Court in connection with this motion if it is later determined that this Court,
absent consent of the parties, cannot enter final orders or judgments in connection therewith consistent with Article
III of the United States Constitution.

as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No party has requested the appointment of a trustee or examiner and no committee has been appointed or designated in this Bankruptcy Case.

7.      Formed in 2009, the Debtor is a privately-owned limited liability company which provided container terminal operations and stevedore services at the Port of Oakland (the "Port"), the fourth largest port on the west coast of the United States.  The Debtor's principal operations consisted of: (i) the offloading and onloading of containers from cargo ships that berth at the Port; (ii) loading the offloaded containers on to trucks so that they may be delivered from the Port to their ultimate domestic destination; and (iii) providing various logistical services to the Debtor's customers in connection with the foregoing.  The Debtor operated from leased berths and terminal space owned by the Port.

8.      Prior to the Petition Date, following years of the Debtor operating at a loss and sustaining material, negative cash flows, the Debtor's members voted to terminate and wind down the Debtor's business operations.  The Debtor commenced the wind down on or about January 19, 2016 and ceased all marine and terminal operations as of April 29, 2016.

9.      On March 16, 2016, the Court approved a settlement (the "Port Settlement") among the Debtor, its members, and the Port, which represented a comprehensive resolution of the various outstanding disputes among such parties.  [Docket No. 173].  Among other things, the Port Settlement allowed the Debtor to avoid burdensome and costly litigation with the Port, provided for an orderly surrender of the premises leased by the Debtor from the Port (the "Premises"), and locked in a *de minimis* recovery on what could have been significant prepetition claims by the Port against the Debtor's estate.  Consistent with the terms of the Port

Settlement, on April 29, 2016, the Debtor timely surrendered the Premises to the Port, coterminous with its discontinuation of all marine and terminal operations.

  10. In April and June 2016, the Debtor, with the Court's approval, held public auctions for the sale of its major equipment including forklifts, trucks, and trailers, and for the sale of its remaining miscellaneous equipment such as shop tools, spare parts, and empty cargo containers. <u>See</u> Order Approving Sale at Public Auctions (Mar. 16, 2016) [Docket No. 172] (the "<u>Auction Order</u>"); Notice of Auction Results (Apr. 27, 2016) [Docket No. 237].

  11. In July 2016, the Court approved a settlement between the Debtor and Pasha Hawaii Holdings LLC ("<u>Pasha</u>") resolving the Debtor's potential claims and liens against Pasha for unpaid stevedoring and terminal services (the "<u>Pasha Settlement</u>"). [Docket No. 328].  The Pasha Settlement brought in nearly $1.3 million to the Debtor's estate.

  12. In August 2016, the Court approved a settlement agreement among the Debtor, certain other companies, the International Association of Machinists and Aerospace Workers, AFL-CIO District Lodge 190 and Local Lodge 1546 (the "<u>IAM</u>"), and certain pensions funds resolving years of ongoing litigation stemming from the Debtor's recognition of another union, the International Longshore and Warehouse Union (the "<u>Union Settlement</u>," and collectively with the Port Settlement and the Pasha Settlement, the "<u>Settlements</u>").

  13. In November 2016, the Court approved a settlement agreement between the Debtor and the City of Oakland Finance & Management Agency – Revenue Division resolving certain priority tax claims and general unsecured claims alleged against the Debtor (the "<u>City of Oakland Tax Settlement</u>"). [Docket No. 430].  The City of Oakland Tax Settlement settled over $3 million in priority tax claims and over $1 million in general unsecured claims for $850,000.

14.     During October and November of 2016, the Debtor objected to various proofs of claim filed in this case.  The objections have led to the consensual resolution or withdrawal of various claims.  The Debtor is continuing to work through the pending claim objections and expects that certain of the claims will be resolved consensually.  The Debtor anticipates that those settlements will allow the Debtor to make a distribution to unsecured creditors.

15.     On June 16, 2016, the Court entered an order extending the initial Exclusive Periods in this Bankruptcy Case by 120 days [Docket No. 302] (the "Initial Exclusivity Extension Order").  The Initial Exclusivity Extension Order was "without prejudice to the Debtor's right to seek and request further extension of the Exclusive Periods."  See Initial Exclusivity Extension Order ¶ 3.

16.     On October 17, 2016, the Court entered an order extending the Exclusive Periods in this Bankruptcy Case by 90 days [Docket No. 408] (the "Second Exclusivity Extension Order").  The Second Exclusivity Extension Order was "without prejudice to the Debtor's right to seek and request further extension of the Exclusive Periods."  See Second Exclusivity Extension Order ¶ 3.

17.     Additional information regarding the Debtor's business, assets, capital structure, and the circumstances leading to the filing of this Bankruptcy Case is set forth in the *Declaration of Heather Stack, Chief Financial Officer, in Support of Chapter 11 Petition and First Day Pleadings of Outer Harbor Terminal, LLC, Debtor and Debtor in Possession* [Docket No. 13] (the "First Day Declaration").

## **RELIEF REQUESTED**

18.    By this Motion, the Debtor seeks entry of an order pursuant to Section 1121(d) of the Bankruptcy Code: (i) extending the Exclusive Filing Period by ninety (90) days through and including March 27, 2017 and (ii) extending the Exclusive Solicitation Period through and including May 26, 2017, or approximately sixty (60) days after the expiration of the Exclusive Filing Period, as extended, without prejudice to its right to seek other appropriate relief.[4]

## **BASIS FOR RELIEF**

19.    Section 1121(b) of the Bankruptcy Code provides debtors with the exclusive right to file a chapter 11 plan during the first 120 days after the commencement of a chapter 11 case. See 11 U.S.C. § 1121(b).  If a debtor files a plan during this period, Section 1121(c)(3) of the Bankruptcy Code provides the debtor with an initial period of 180 days as of the commencement of the chapter 11 case to solicit acceptance of such plan.  See 11 U.S.C. § 1121(c)(3).  Section 1121(d) of the Bankruptcy Code permits a bankruptcy court to extend a debtor's exclusive period to file a plan and solicit acceptances thereof upon demonstration of "cause."  See 11 U.S.C. § 1121(d) ("[O]n request of a party in interest and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section."). For the reasons described in this Motion, the Debtor respectfully submits that "cause" exists to extend the Exclusive Periods.

20.    It is well established that the decision to extend the Exclusive Periods is left to the sound discretion of the Bankruptcy Court and should be based upon the facts and circumstances

---

[4]  The current Exclusive Filing Period and Exclusive Solicitation Period are set to expire on December 27, 2016 and February 27, 2017, respectively.  Pursuant to Local Rule 9006-2, the filing of this Motion prior to the current deadlines serves to automatically extend such deadlines until the Court rules on this Motion. See Del. Bankr. L.R. 9006-2.

of the particular case.[5]  See, e.g., First Am. Bank of N.Y. v. Sw. Gloves & Safety Equip., Inc., 64 B.R. 963, 965 (D. Del. 1986).  Although the Bankruptcy Code does not define "cause," a number of courts have construed the term in consideration of the Bankruptcy Code's underlying legislative history.  See, e.g., In re Burns & Roe Enters., Inc., No. 00-41610 RG, 2005 WL 6289213, at *4 (D.N.J. Nov. 2, 2005) (noting that the exclusive periods under Section 1121 of the Bankruptcy Code are intended "to promote an environment in which the debtor's business may be rehabilitated and a consensual plan may be negotiated" (quoting H.R. Rep. No. 103-835, at 36 (1994), as reprinted in 1994 U.S.C.C.A.N. 3340, 3344)).  This time of exclusivity affords a debtor an opportunity to propose a chapter 11 plan and solicit acceptances thereof without the potential value deterioration and disruption to business operations that would ensue from the filing of competing plans by non-debtor parties.  Further, the legislative history indicates that "cause" should be interpreted in such a way "to allow the debtor to reach an agreement."  H.R. Rep. No. 95-595 at 231, 232 (1978), as reprinted in 1978 U.S.C.C.A.N. 5963, 6191.  The opportunity for a debtor to negotiate a plan unimpaired by competition is intended to allow a debtor time to satisfy its creditors, win support for its plan, and ultimately its survival as a business.  See Geriatrics Nursing Home v. First Fidelity Bank, N.A., 187 B.R. 128, 133 (D. N.J. 1995).

21.    Moreover, the fact that a debtor may propose a liquidating, as opposed to a reorganizing, plan should not negatively impact its ability to retain the exclusive right to file a

---

[5]  Although the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") amended Section 1121(d) by prohibiting extensions of the Exclusive Filing Period and Exclusive Solicitation Period beyond 18 and 20 months of the petition date, respectively, there was no revision to the standards for obtaining interim extensions. Accordingly, pre-BAPCPA case law continues to apply and must be examined in the context of this Bankruptcy Case.

plan.   Courts in this District have, on numerous occasions, granted similar extensions of a

debtor's exclusive periods.[6]

22.    In determining whether cause exists to extend a debtor's exclusive periods, courts

consider a variety of factors, including:

(a)    the size and complexity of the case;

(b)    the necessity for sufficient time to permit the debtor to negotiate a chapter 11 plan
and prepare adequate information;

(c)    the existence of good faith progress toward reorganization;

(d)    the fact that the debtor is paying its bills as they come due;

(e)    whether the debtor has demonstrated reasonable prospects for filing a viable plan;

(f)    whether the debtor has made progress in its negotiations with creditors;

(g)    the amount of time that has elapsed in the case;

(h)    whether creditors are prejudiced by the extension;

(i)    whether the debtor is not seeking to extend exclusivity to pressure creditors to
accede to the debtor's reorganization demands; and

(j)    the existence of an unresolved contingency.

See In re Cent. Jersey Airport Servs., LLC, 282 B.R. 176, 183 (Bankr. D.N.J. 2002); McLean

Indus., 87 B.R. at 834; see also Dow Corning, 208 B.R. at 664 (identifying the above factors and

noting that courts generally rely on the same factors to determine whether exclusivity should be

extended); In re Friedman's Inc., 336 B.R. 884, 888 (Bankr. D. Ga. 2005) (same).   Any one of

these factors may constitute sufficient grounds for extending a debtor's exclusive periods.   See In

---

[6]   See, e.g., In re Energy Future Holdings Corp., Case No. 14-10979 (CSS) (Bankr. D. Del. Sept. 16, 2014) [D.I. 2063] (granting first motion to extend period to file plan and period to solicit votes); In re Overseas Shipholding Group, Inc., Case No. 12-20000 (PJW) (Bankr. D. Del. Dec. 20, 2013) [D.I. 2190] (granting third motion to extend period to file plan and period to solicit votes); In re A123 Sys., Inc., Case No. 12-12859 (KJC) (Bankr. D. Del. Mar. 12, 2013) [D.I. 1198] (granting extensions of period to file plan and period to solicit votes); In re SP Newsprint Holdings LLC, Case No. 11-13649 (CSS) (Bankr. D. Del. Feb. 7, 2012) [D.I. 449] (same); In re Caribbean Petroleum Corp., Case No. 10-12553 (KG) (Bankr. D. Del. Jan. 1, 2011) [D.I. 556] (same); In re Advanta Corp., Case No. 09-13931 (KJC) (Bankr. D. Del. Mar. 2, 2010) [D.I. 301] (same); In re Wash. Mut., Inc., Case No. 08-12229 (MFW) (Bankr. D. Del. Nov. 20, 2009) [D.I. 692] (same).

re Express One Int'l, Inc., 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996).  The application of these factors to the facts and circumstances of this Bankruptcy Case demonstrates that the requested extensions of the Exclusive Periods are both appropriate and necessary.

23.    In light of the relevant factors discussed herein, the Debtor submits that more than sufficient "cause" exists to grant the relief requested herein and extend the Exclusive Periods. The Debtor has been engaged in numerous activities, including winding down the bankruptcy estate, rejecting leases and executory contracts, marketing and selling its assets, negotiating and obtaining Court approval of the Settlements, and objecting to claims and attempting to resolve disputes with remaining constituencies.  The Debtor has pursued each of these steps diligently in consultation with appropriate parties.  The accomplishment of these tasks, as well as the Debtor's ongoing efforts to resolve the claims against the estate and related claims objections, are expected to allow the Debtor to formulate and propose an appropriate chapter 11 plan of liquidation within the extended Exclusive Periods requested herein.

*1. The Size, Complexity and Duration of the Bankruptcy Case*

24.    This Bankruptcy Case is sufficiently complex to warrant the extension of the Exclusive Periods.  The Debtor conducted its operations pursuant to sophisticated agreements with the Port and other parties, including leases of four berths and leases for numerous pieces of cranes and other equipment.  Given the labor intensive nature of these operations, the Debtor employed a large number of personnel, and also utilized the services of a large number of union laborers.  In addition, throughout the course of this Case, the Debtor has been engaged either in active litigation with or settlement discussion with various parties, including the Port, the City of Oakland, the IAM labor union, the County of Alameda Tax Assessor and Terex Financial Corporation.

25.    The size and complexity of the Debtor's business, assets, and employee relationships have necessitated significant effort by the Debtor's management, employees and advisors since the Petition Date.  Transitioning and winding down business operations through the stages of chapter 11 is a major undertaking requiring significant management attention, and the Debtor has done so while seeking to maximize the value of its assets for the benefit of its stakeholders.  Accordingly, the Debtor submits that this factor weighs in favor of the extension of the Exclusive Periods requested herein.

*2. Good Faith Progress Has Been Made in This Bankruptcy Case*

26.    The Debtor has made meaningful progress in this Bankruptcy Case.  Among other accomplishments, the Debtor has obtained necessary interim and final "first and second day" relief to minimize operational disruption, has prepared and timely filed its Schedules, has auctioned its assets, has objected to multiple claims, has negotiated the settlements with some of the key constituencies in this Bankruptcy Case, has ceased all marine and terminal operations at the Port, and auctioned its major assets and equipment.  The Debtor achieved these results in a

very timely and efficient manner and, in doing so, has avoided drawing on its DIP facility, further benefitting its creditors in the process.

27.    Going forward, the Debtor will focus its efforts on completing the claims reconciliation process and formulating the chapter 11 plan of liquidation.    Accordingly, the Debtor has made significant progress in achieving results that benefit the estate's stakeholders, which warrants the requested extension of the Exclusive Periods.

*3.  The Necessity of Sufficient Time to Negotiate and Prepare Adequate Information*

28.    As set forth above, since the Petition Date, the Debtor and its professional advisors have focused much of their time, energy and resources on obtaining maximum value for the Debtor's assets, winding down business operations, negotiating the various settlements and otherwise attempting to reduce the magnitude of claims against the estate, and timely responding to inquiries from various parties in interest in this Bankruptcy Case.

29.    The Debtor is now poised to productively move forward with the next stage of this Bankruptcy Case, including resolving the remaining large claims asserted against the estate and formulating a chapter 11 plan.  In light of the foregoing factors, the Debtor's request for an extension of ninety days is modest and justified.

*4.  The Debtor is Paying Its Debts as They Come Due*

30.    The Debtor respectfully submits that, under the relevant facts and circumstances of this Bankruptcy Case, the requested extension of the Exclusive Periods will not prejudice the legitimate interests of postpetition creditors, as the Debtor continues to make timely payments on its undisputed postpetition obligations.    As such, this factor weighs in favor of extending the Exclusive Periods.

*5. The Debtor is Not Seeking an Extension to Pressure Creditors*

31.    The Debtor has no ulterior motive in seeking an extension of the Exclusive Periods.  The Debtor has worked diligently over the past few months to maximize the value of its assets for stakeholders through the wind down process.  The Debtor is not seeking an extension to pressure its creditors.  Indeed, the opposite is true.  The Debtor is seeking the extension of the Exclusive Period to allow it to continue to complete the claims reconciliation process in connection with a potential plan of liquidation.  This factor militates in favor of the requested extension.

*6. The Adverse Impact on the Bankruptcy Case*

32.    Termination of the Exclusive Periods now would be a serious detriment to the Debtor's estate and interested parties that have invested significant time and resources in the Bankruptcy Case.  Such termination would adversely impact the Debtor's efforts to preserve and maximize the value of the estate and the progress of the Bankruptcy Case, disincentivize creditors from negotiating with the Debtor, and reduce the Debtor's prospects for successfully soliciting acceptances of a chapter 11 plan.  In addition, the filing of any competing plan could greatly complicate and increase the cost of administering this Bankruptcy Case.

33.    In light of the issues that must be resolved before a plan can be finalized, the Debtor believes that neither its creditors nor any other party in interest would be in a position to propose a plan during the periods contemplated herein.  Accordingly, the relief requested herein will not result in a delay of the plan process and will simply permit the process to move forward in an orderly fashion at significantly less cost to the estate.  Accordingly, the Debtor respectfully submits that cause exists to extend the Exclusive Periods pursuant to Section 1121(d) of the Bankruptcy Code.

## NO PRIOR REQUEST

34.    No previous motion for the relief sought herein has been made to this or any other Court.

## NOTICE

35.    Notice of this Motion shall be provided to: (a) the Office of the United States Trustee for the District of Delaware; (b) the Debtor's twenty (20) largest unsecured creditors, as filed with the Debtor's chapter 11 petition; (c) any banking or financial institution that holds the Debtor's accounts; (d) counsel to HHH Oakland, Inc. and Terminal Investment Ltd., S.A.; and (e) all parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002.  The Debtor submits that no other or further notice is necessary.

*[Reminder of page left intentionally blank.]*

WHEREFORE, the Debtor respectfully requests that the Court enter an order, substantially in the form attached hereto as <u>Exhibit A</u>, (i) extending the Exclusive Filing Period by ninety (90) days through and including March 27, 2017 and (ii) extending the Exclusive Solicitation Period and together with the Exclusive Filing Period, the Exclusive Periods through and including May 26, 2017, or approximately sixty (60) days after the expiration of the Exclusive Filing Period, as extended, and (iii) granting such other relief as is just and proper.

Dated:  December 22, 2016
Wilmington, Delaware

Respectfully submitted,

**RICHARDS, LAYTON & FINGER, P.A.**

/s/  *Andrew M. Dean*
Mark D. Collins (No. 2981)
Marisa A. Terranova Fissel (No. 5396)
Andrew M. Dean (No. 6147)
One Rodney Square
920 North King Street
Wilmington, DE 19801
Telephone:    (302) 651-7700
Facsimile:     (302) 651-7701
Email:          collins@rlf.com
                    terranova@rlf.com
                    dean@rlf.com

-and-

**MILBANK, TWEED, HADLEY & McCLOY LLP**
Gregory A. Bray (admitted *pro hac vice*)
Thomas R. Kreller (admitted *pro hac vice*)
Haig M. Maghakian (admitted *pro hac vice*)
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
Telephone:    (424) 386-4000
Facsimile:     (213) 629-5063
Email:          gbray@milbank.com
                    tkreller@milbank.com
                    hmaghakian@milbank.com

-and-

Dennis F. Dunne
Samuel A. Khalil
28 Liberty Street
New York, NY 10005
Telephone:     (212) 530-5000
Facsimile:      (212) 530-5219
Email:           ddunne@milbank.com
                    skhalil@milbank.com
*Counsel to Debtor and Debtor in Possession*